EMPLOYERS' LIABILITY ASSURANCE CORPORATION, LIMITED, OF LONDON, ENGLAND, Respondent, *v.* POST & MCCORD, INC., Appellant.

Submitted June 10, 1941; decided July 29, 1941.

*Joseph A. Barrett* and *Robert R. Cardany* for appellant. The judgment in the action brought by Graziano is *res adjudicata* as to the sole negligence of plaintiff's subrogor, in allowing the opening to be maintained by reason of which the injury occurred to Graziano. (*Fulton Co. G. & E. Co.* v. *Hudson River T. Co.,* 200 N. Y. 287; *Williams* v. *Board of Trustees,* 210 App. Div. 161.) The active negligence of plaintiff's subrogor has been adjudicated in the Graziano

case and this is decisive. (*Caspersen* v. *LaSala Bros.*, 253 N. Y. 491; *Treadwell Co.* v. *United States Fidelity & Guaranty Co.*, 158 Misc. Rep. 939; 249 App. Div. 809; *De Lee* v. *Pardy Construction Co.*, 249 N. Y. 103.) The contract made by defendant with the owner of the building does not provide for indemnity to plaintiff's subrogor for the latter's own negligence. (*Thompson-Starrett Co.* v. *Otis Elevator Co.*, 271 N. Y. 36.)

*Bertrand L. Pettigrew* for respondent. The record in the Graziano case and the decision of the Appellate Division show that Hegeman-Harris Co. was held liable therein on the sole ground of a violation of subdivision 4 of section 241 of the Labor Law (Cons. Laws, ch. 31). (*Slaviz* v. *Wahlig & Sonsin Co.*, 167 App. Div. 658; *Ithaca Trust Co.* v. *Driscoll Brothers & Co.*, 169 App. Div. 377; *Graziano* v. *Post & McCord, Inc.*, 241 App. Div. 682; *McNamara* v. *Eastman Kodak Co.*, 220 N. Y. 180; 232 N. Y. 18.) Plaintiff's subrogor was adjudicated in the Graziano action to be a general contractor, and being a general contractor, was entitled to the benefit of conditions of defendant's contract with the owner by the express provisions thereof. (*Potter* v. *Gilbert*, 130 App. Div. 632; 196 N. Y. 576; *American Employers' Ins. Co.* v. *Brandt Masonry Corp.*, 252 App. Div. 506; *Dudar* v. *Milef Realty Corp.*, 258 N. Y. 415; *Thompson-Starrett Co.* v. *Otis Elevator Co.*, 271 N. Y. 36; *Long Island R. R. Co.* v. *American Bridge Co.*, 175 App. Div. 170; 225 N. Y. 692; *Turner Construction Co.* v. *Rockwood Sprinkler Co.*, 249 App. Div. 508; 275 N. Y. 635.) If privity to the contract of the defendant with the owner be denied to plaintiff's subrogor, then the defendant was primarily responsible for Graziano's injuries and plaintiff should have judgment under its second cause of action. (*Lord & Taylor* v. *Yale & Towne Mfg. Co.*, 230 N. Y. 132; *Scott* v. *Curtis*, 195 N. Y. 424; *Dunn* v. *Uvalde Asphalt Paving Co.*, 175 N. Y. 214; *Oceanic Steam Navigation Co.* v. *Compania Transatlantica Espanola*, 134 N. Y. 461; *Canandaigua* v. *Foster*, 156 N. Y. 354; *Wanamaker* v. *Otis Elevator Co.*, 186 App. Div. 655; *Fulton Co. Gas & Electric*

*Co.* v. *Hudson River Tel. Co.,* 130 App. Div. 343; 200 N. Y. 287; *Horning* v. *Hudson River Tel. Co.,* 111 App. Div. 122; 186 N. Y. 552; *Hudson Valley Ry. Co.* v. *Mechanicville El. L. & G. Co.,* 180 App. Div. 86; *Dudar* v. *Milef Realty Corp.,* 258 N. Y. 415; *Thompson-Starrett Co.* v. *Otis Elevator Co.,* 271 N. Y. 36.)

RIPPEY, J.  On July 6, 1933, one Graziano docketed a judgment in Queens county against Hegeman-Harris Company, Inc., and Post & McCord, Inc., as joint tort feasors, for $18,255.03 in an action brought by Graziano to recover damages for personal injuries which he alleged he received because of the concurring negligence of both of said parties. After affirmance upon appeal, each of the judgment debtors paid one-half of the judgment with interest and costs.

The plaintiff insurance carrier of Hegeman-Harris Company, Inc., as subrogee, brought this action against Post & McCord, Inc., under the authority of section 211-a of the Civil Practice Act, for contribution for the amount its subrogor paid on the judgment.  Section 211-a permits the maintenance of an action for contribution where a money judgment has been recovered jointly against two or more defendants in an action for a personal injury or property damage, after the judgment has been paid in whole or in part by one or more of such defendants, in behalf of each defendant who has paid more than his *pro rata* share when such action could not otherwise be maintained (*Ward* v. *Iroquois Gas Corp.,* 258 N. Y. 124).  By the recovery in the Graziano case, as to Graziano the liability of the defendants therein was conclusively established to be that of joint tort feasors (*Fulton County G. & E. Co.* v. *Hudson River Telephone Co.,* 200 N. Y. 287; *Amalfi* v. *Post & McCord, Inc.,* 248 App. Div. 864; leave to appeal denied, 273 N. Y. 677).  The issue of liability as between defendants was not litigated or determined on the Graziano trial and the parties here are not concluded on that issue by the provisions of section 211-a of the Civil Practice Act unless the judgment in the Graziano action was based on facts fatal

to recovery herein (*Fulton County G. & E. Co.* v. *Hudson River Telephone Co., supra;* cf. *Dudar* v. *Milef Realty Corp.,* 258 N. Y. 415; *Kinloch Tel. Co.* v. *City of St. Louis,* 268 Mo. 485; *Burris* v. *American Chicle Co.,* 33 Fed. Supp. 104).

In the first cause of action set up in the complaint, respondent alleges that the injuries to Graziano were occasioned solely by the negligence of Post & McCord, Inc., and that, by contract, Post & McCord agreed to indemnify plaintiff's subrogor for any loss it might sustain because of such negligence. The second cause of action is based on the theory that Post & McCord, Inc., was primarily required to protect Graziano from injury from falling objects, that the accident arose solely because of the failure of Post & McCord to perform its affirmative primary duty, that Hegeman-Harris Company, Inc., was only secondarily liable because of the applicable statutes of the State of New York and that "defendant herein impliedly agreed to indemnify Hegeman-Harris Company, Inc., for any damage or loss occasioned by the failure of the defendant herein properly to guard and protect said workmen." We think that plaintiff may not recover on either theory.

In 1931 the Metropolitan Square Corporation (now known as Rockefeller Center, Inc.) was the owner of property in the city of New York, covering three city blocks between Fifth and Sixth avenues and Forty-eighth and Fifty-first streets, which it proposed to develop by the erection thereon of a group of buildings and by various other improvements. On October 15, 1931, Todd, Robertson, Todd Engineering Corporation and Todd & Brown, Inc., acting as joint agents for the owner, entered into a general contract with Hegeman-Harris Company, Inc., for the construction of buildings numbered 1 and 9 in the said development. It was provided that the general contractor should not itself undertake or engage in any part of the physical construction or erection of the buildings or supply any of its own materials or labor other than those required for the prosecution of its duties of supervision, direction and management and such other obligations as might be imposed upon it by the terms

of the contract unless otherwise directed by the owner or managers. The general contractor was nevertheless required to furnish sufficient competent superintendents and foremen in charge of the work, to be responsible for the erection and delivery of the buildings in accordance with the plans and specifications and applicable laws, rules, regulations and ordinances of all governmental authorities and all departments and bureaus thereof and to supervise and see that the terms of all subcontracts were complied with during the progress of the work. The general contractor undertook, in behalf of, and subject to the supervision and approval of, the owner, to enter into all subcontracts for labor and materials to be used in the construction and completion of the buildings and considered necessary or proper by the managers. It was required to adopt all subcontracts already made by the owner and managers, however, and the right was reserved by them to award further subcontracts for materials or labor whenever the owner deemed it for its best interest so to do. The general contractor was required to procure such public liability, owner's and contractor's contingent liability and workmen's compensation insurance as the owner and managers might require, through brokers and in companies selected by them, and other insurance to the extent necessary fully to protect the owner and managers and the general contractor from liability for damages to its employees and to the public and others arising out of its negligence, or otherwise, during the progress of the work. The general contractor was thus required to keep competent men on the job to see that the subcontractors did their work properly and according to required schedule and sequence as the work progressed (Labor Law, § 241 [Cons. Laws, ch. 31]; *Caspersen* v. *La Sala Bros.*, 253 N. Y. 491).

On March 16, 1931, an agreement was entered into between the owner and managers above mentioned with Post & McCord, Inc. (therein called the contractor), wherein the contractor agreed to furnish, equip and complete in the manner set forth in the contract all structural steel work for such buildings as the owner might elect to erect and for such

improvements as it might elect to make upon the proposed development. The owner and managers reserved the right to award general contracts for the construction of any or all of the buildings and improvements to be included in such development to one or more general contractors and, in the event that such award should be made, Post & McCord, Inc., was required, with certain exceptions not here material, to perform the agreement as though such general contractor or contractors were named in the agreement in place of the managers.

In its first cause of action, respondent relies particularly upon the clause of the subcontract which reads as follows: " The Contractor shall take usual and proper precautions to prevent accidents or damage to persons and property on, about, or adjacent to the premises, and shall erect and keep in place at all times all usual, proper, necessary and required danger signs and safeguards and give full instructions to its employees to prevent damage or injury to or by them or others or to property on or about the hod hoists, well holes, elevator shafts, scaffolding, window openings, stairways, sidewalks, courts, skylights and all other parts of the premises. The Contractor will indemnify the Owner and the Managers against all claims, suits, damages and judgments to which the Owner and/or the Managers may be subjected or suffer by reason of any injury to person or property resulting from negligence or carelessness on the part of the Contractor, its employees or permitted subcontractors in the performance of this Agreement. In case the Contractor shall fail to pay or bond any judgment against the Owner and/or the Managers for any injury to person or property, the Owner may pay such judgment, with all interest and costs, to the person entitled thereto, out of any moneys due or to become due to the Contractor hereunder, and the amount of such payment shall be deducted from the sum to which the Contractor shall be entitled under this Agreement, and if such sum shall be insufficient for the purpose, the Contractor shall pay such deficiency to the Owner on demand. The Contractor will,

at all times, carry full Contingent and Public Liability and Workmen's Compensation Insurance protecting the Owner and the Managers against any and all loss or damage for personal injury, including death which may occur at, on or about the premises or on the streets or sidewalks adjacent thereto or on adjoining property and which may arise from any breach of legal duty or neglect of the Contractor, or its permitted subcontractors or anyone directly or indirectly employed by either of them. The Contractor will carry such insurance in such companies or firms and in such amounts as may be approved by the Managers, and will, on request of the Managers, exhibit to them the policies for such insurance, as well as furnish to the Managers proper certificates of such insurance."

The Post & McCord contract must be read and construed as a whole, having in mind its purpose and limitations and the circumstances and conditions surrounding its execution and delivery. Its purpose was to provide for only a small portion of the required work of construction and to protect the owner and managers against defaults and liability for loss which might arise only from the subcontractor's defaults and negligence in the prosecution of the work which was required to be done under that contract. The learned trial court correctly construed the contract to be " not primarily one of indemnity but one essentially for the erection of steel, and the indemnity agreement is an incident of the contract intended to afford to the owner protection against claims for damages." Nothing is found in the contract which provides indemnity to the general contractor for its own negligence. The general contractor was not a party or privy to that contract except in the sense we have already indicated. It was provided only that in the event a general contract was let the Post & McCord contract should then be a subcontract thereunder for a part of the work to be performed by the general contractor. The agreement between the owner and the general contractor specifically provides that the general contractor will respond for its own negligence and will indemnify the owner and managers for

loss arising out of its negligence. However broad the agreement of Post & McCord, Inc., for indemnity may be, its protection extended only to loss by the owner on account of the negligence of Post & McCord in connection with the performance of the work required under its contract. The owner suffered no damage. Through subrogation or otherwise, the general contractor or its insurer can claim nothing through the owner.

Since the contract provided that the subcontractor should carry out his contract in conformity with the " law " which should " include all laws, rules, regulations, requirements or ordinances of federal, state, county, city and bureau authorities," etc., a majority of the Appellate Division were of the opinion that it was required to floor over all open spaces in the building as construction progressed and to hold the owner harmless from claims for damages for injuries resulting from its failure so to do. That provision related, however, only to " laws " applicable to the carrying forward of the work specified in the subcontract and flooring and planking of open spaces between steel work were not work which it was required to do. Loss arising out of negligence for which respondent is seeking indemnity did not arise out of the negligence of Post & McCord, Inc., as we will later point out, but arose by virtue of the negligence of plaintiff's subrogor. It was not the negligence of the owner and managers. " Contracts will not be construed to indemnify a person against his own negligence unless such intention is expressed in unequivocal terms." (*Thompson-Starrett Co.* v. *Otis Elevator Co.*, 271 N. Y. 36, 41). There was nothing in the Post & McCord contract indicating any intention that the latter should be required to indemnify the owner or managers or the general contractor for their negligence. On the other hand, the contract on this subject expressly provided solely for protection of the owner against liability for any negligence of Post & McCord, Inc., in connection with the work required in the erection of steel work for the building.

The evidence in the Graziano action was sufficient to establish and the jury found that the Knickerbocker Fireproofing Co., Inc., had a subcontract for the concrete work, including the floors and fireproofing of building No. 1 above referred to; that at the time of the accident to Graziano on August 22, 1932, the thirty-seventh floor was practically completed, the cement having been poured except around the beams of the several openings; that the arches were in place on the thirty-eighth floor and cement was being poured there; that the Post & McCord Company's derricks and employees were engaged in steel erection on the forty-fifth floor and that riveting of steel work was going on at some or all of the three or four floors below; that Graziano was a carpenter in the employ of the Knickerbocker Company at the time of the accident engaged in erecting wooden forms about an opening between the thirty-seventh and thirty-eighth floors at one corner of an open shaft four or five feet wide by ten or eleven feet long in which air ducts were being installed; that while so engaged, he was standing upon a sawhorse placed by him in the shaft on planks he had placed across the open space and a " bull pin," a working tool used by employees of Post & McCord, Inc., weighing some five or six pounds, dropped through the shaft from above where riveters were at work and struck him causing his injuries; that neither permanent flooring nor temporary planking had been placed across the shaft at floors above the point where he was working although floors had been laid as the work progressed generally throughout the building; that the space was not to be left permanently open but was left open temporarily for the installation of air ducts therein, and was not required for proper construction of the iron or steel work, for raising or lowering materials or for stairways and elevator shafts designed by the plans and specifications; and that Graziano was not himself guilty of any negligence contributing to the accident.

There was sufficient evidence of violation by the general contractor of section 241 of the Labor Law and section 195

of article 10 of chapter 5 of the Code of Ordinances of the City of New York. (*Mc Namara* v. *Eastman Kodak Co.*, 220 N. Y. 180; *Drummond* v. *Norton Co.*, 213 N. Y. 670; *Sadrakula* v. *Stewart & Co.*, 279 N. Y. 686). The court charged the Graziano jury as matter of law, upon the record there presented, that it was the *active duty* of the general contractor, if the space required covering, to cover over the floors. The charge was right (*Lyles* v. *Terry & Tench Co.*, 227 N. Y. 361; *De Haen* v. *Rockwood Sprinkler Co.*, 258 N. Y. 350; *Caspersen* v. *La Sala Bros.*, *supra;* Labor Law, § 241); but right or wrong, that instruction is here beyond attack. If a proximate cause of the accident, violation of the statute, as the court correctly charged, was actionable negligence and violation of the ordinance evidence to be considered with other evidence on the question of negligence. (*Teller* v. *Prospect Heights Hospital*, 280 N. Y. 456, 460, 461. Cf. *Schmidt* v. *Merchants Despatch Transp. Co.*, 270 N. Y. 287, 306.) Whether the general contractor performed its active primary duty in that respect and whether the failure to do so, if there was such failure, was the sole proximate cause of the accident or a concurring cause without which the accident could not have happened were questions of fact for the jury (*Lyles* v. *Terry & Tench Co.*, *supra; De Haen* v. *Rockwood Sprinkler Co.*, *supra*). The jury found that negligence of the general contractor was a proximate cause of the accident. While it is true that the accident could not have happened without the dropping of the pin by employees of Post & McCord, Inc., beyond doubt the pin which started to fall from an upper floor could not have caused the accident to Graziano had the space above where he was working been filled in or planked over by the general contractor as required by ordinance and statute.

The charge and proceedings upon submission in the Graziano case clearly show that Post & McCord, Inc., were held to have no duty to floor or cover over the space in the shaft. Under the charge, the jury were authorized to find and did find that Post & McCord, Inc., was negligent through its employees' failure to exercise such care as

ordinary prudence required in allowing the pin to fall, knowing that persons were working below, that Hegeman-Harris Company, Inc., was negligent in not covering the floors as required by section 241 of the Labor Law and section 195 of chapter 5 of article 10 of the Building Code of the Code of Ordinances of the City of New York and that the two acts of negligence " operated at the same time to produce the result which might be produced by either." The jury found that both defendants were liable since, as the court said, " in such case they are concurrent causes, each is a proximate cause of the injury and both defendants may be held liable." The findings of the jury in the Graziano case upon the issues necessarily litigated are conclusive and fatal to any recovery here on any theory that Post & McCord, Inc., was solely primarily liable (*Fulton County G. & E. Co.* v. *Hudson River Telephone Co.*, *supra*) and required to pay the entire judgment. The mere fact that the acts of the general contractor and of the subcontractor concurring to produce the accident arose out of and were violations of separate and distinct duties does not bar contribution since the combined negligence of the independent tort feasors or omission of separate acts of care concurred or contributed at the same instant to produce the injury. (13 Am. Jur. Contribution, § 52, and cases cited.)

The judgment of the Appellate Division should be reversed and that of the Trial Term affirmed, with costs in this court and in the Appellate Division.

LEHMAN, Ch. J., LOUGHRAN, FINCH, LEWIS and CONWAY, JJ., concur; DESMOND, J., taking no part.

Judgment accordingly.