OLIVE APPLEBEE, as Administratrix of the Estate of CHARLES W. APPLEBEE, Deceased, Respondent, *v.* STATE OF NEW YORK, Appellant. (Claim No. 31652.)

RUTH I. McGUIRE, Individually and as Administratrix of the Estate of CHARLES J. McGUIRE, Deceased, Respondent, *v.* STATE OF NEW YORK, Appellant. (Claim No. 31183.)

Argued March 8, 1955; decided May 26, 1955.

*Jacob K. Javits, Attorney-General (John R. Davison* and
*Henry S. Manley* of counsel), for appellant. The weight of the
evidence supports the findings of the Court of Claims. (*Eason*
v. *State of New York,* 280 App. Div. 358; *Amend* v. *Hurley,*
293 N. Y. 587; *People ex rel. MacCracken* v. *Miller,* 291 N. Y.
55; *Miller* v. *Hine,* 281 App. Div. 387; *Rugg* v. *State of New York,*
284 App. Div. 179; *Nuss* v. *State of New York,* 301 N. Y. 768;
*Foley* v. *State of New York,* 265 App. Div. 682, 294 N. Y. 275;

*Eastman* v. *State of New York,* 303 N. Y. 691; *Van de Walker* v. *State of New York,* 278 N. Y. 454; *Croniser* v. *State of New York,* 195 Misc. 576; *Boyce Motor Lines* v. *State of New York,* 280 App. Div. 693, 306 N. Y. 801.)

*William L. Shumate, Carl Dengel* and *Thomas C. Cusack* for Olive Applebee, respondent. I. The function of a stop sign is not only to give motorists timely warning that they are approaching an intersection. It is a command to them to come to a full stop before entering the intersection. The State's failure to replace the stop sign was a proximate cause of the accident. (*Nuss* v. *State of New York,* 195 Misc. 38, 276 App. Div. 300.) II. The Appellate Division's order with respect to modification and reversal of findings of fact was correct.

*Bradford F. Miller* for Ruth I. McGuire, respondent. I. The negligence, if any, of Miss Steinmiller was at most a cause concurring with the negligence of the State of New York to bring about the accident. II. The failure of the State of New York to repair or replace the destroyed sign was a proximate cause of the fatal accident and the State of New York is liable therefor. (*Nuss* v. *State of New York,* 195 Misc. 38, 276 App. Div. 300, 301 N. Y. 768; *Eastman* v. *State of New York,* 303 N. Y. 691; *Croniser* v. *State of New York,* 195 Misc. 576; *Walter* v. *State of New York,* 187 Misc. 1034.)

Fuld, J. At about 2 o'clock of a Sunday afternoon in November of 1951, there was a 3-car collision at the intersection of a county highway, known as Fisk Road, with Route 96A, a concrete state road, near the Sampson Air Force Base, not far from the City of Geneva, in Seneca County. The weather was clear, the roads dry. Marilyn Steinmiller, 18 years of age, had come from Rochester that same day to visit a friend at the Air Base and was returning home with two companions by way of 96A. Leaving the Base, she proceeded easterly along Fisk Road at about 15 miles an hour and, when she came to within 20 feet of the state highway, she started to slow down. She had been driving so slowly that it was only necessary for her to take her foot off the gas pedal to slacken her speed, though she "thought" she used the brake and, "as far as" she could "remember," she was at a "standstill" when she was hit. At any rate, after she had slowed down, she "glanced" to her left

and saw two cars parked in front of a restaurant on the northwest corner; able to see " about 200 feet " in that direction, she observed no traffic approaching. Then, glancing to the right, she saw a Greyhound bus, about 100 feet away, coming north on 96A. She thereupon stopped at the intersection, her automobile " about a foot or a foot and a half out into 96A ". At that moment, a car traveling south on that road, driven by Charles McGuire, hit the left front fender of her car; she had not observed it before the impact. And then things happened fast. Her car was swung half way around so that its rear end was in the northbound lane of 96A; McGuire's auto swerved into the oncoming Greyhound bus, turned over and was pushed by the bus back against the Steinmiller car, which then hit a car parked at the gas station on the northeast corner of the intersection.

McGuire and the bus driver Applebee died of the injuries that they sustained in the crash; their wives are the claimants in these two suits, brought against the state on the theory that the latter was negligent in failing to have a stop sign on Fisk Road just before its intersection with 96A. Such a sign had been there — at a point some 36 feet west of the state highway, by order of the New York State Traffic Commission, pursuant to article 7 of the Vehicle and Traffic Law — but it had been struck by an automobile and bent over almost to the ground about seven weeks before the present accident, and had not been repaired or replaced.

Although the evidence is not explicit that Miss Steinmiller had traveled from Rochester to Sampson via Route 96A and Fisk Road, she was aware, as both the trial court and the Appellate Division found, that, to return to Rochester, she had to go by way of 96A and intended to turn at the intersection, thus indicating a familiarity with the road and the route. Moreover, when asked why she started to slow down on Fisk Road, she answered that she " saw " that she was " entering another highway." And, although she asserted that, because of the parked cars, she could see only 200 feet to the left on 96A, there was testimony that one on Fisk Road, 10 feet from the intersection, could see to the north for a distance of about 600 feet.

The Court of Claims, in dismissing both claims, made findings substantially in accord with the facts outlined above. In addi-

tion, it expressly found that Miss Steinmiller was returning to Rochester from Sampson by the same route by which she had come and " knew that it was heavily traveled by automobiles at high speeds ". The court's conclusion was that the two drivers — who had died — had been free from contributory negligence, that Miss Steinmiller was guilty of gross negligence which constituted " the sole proximate cause " of the accident and that the collision was not due to any negligence of the state. A non-unanimous Appellate Division reversed; in essence, it found that the state's failure to restore the stop sign was a proximate cause of the accident and that the young lady's negligence, " if any," was at most a contributing factor. Accordingly, awards were rendered in favor of each claimant.

Since the reversal was on the law and the facts and since new findings, at variance with those of the trial court, were made with regard to the state's negligence, we must determine where the weight of evidence lies. (See, e.g., *Canepa* v. *State of New York,* 306 N. Y. 272, 276; *Eastman* v. *State of New York,* 303 N. Y. 691, 693.) In our view, it supports the findings and decision of the Court of Claims.

We are not unmindful that in a number of cases involving automobile accidents we have upheld judgments against the state or a municipality for failing to maintain a stop sign as required by statute. (See, e.g., *Murphy* v. *De Revere,* 304 N. Y. 922; *Eastman* v. *State of New York, supra,* 303 N. Y. 691; *Nuss* v. *State of New York,* 301 N. Y. 768. See Vehicle and Traffic Law, § 95-d.) In all of them, however, not only could the state or the municipality properly be deemed negligent in failing to maintain a sign, but the proof established that the drivers had proceeded into the intersection without stopping, in such a manner that it was reasonable to infer that such negligence was the proximate cause of the accident.

In the *Eastman* case (*supra,* 303 N. Y. 691), a truck, approaching a T intersection from the west and attempting to make a left-hand turn into the highway running approximately north and south, collided with a car driving south on that road. The east-west highway made a long curve into the north-south one in such a way that, without a stop sign, it was difficult to tell which driver should, or would, stop. The state traffic commis-

sion, however, had previously ordered a stop sign, on the south-west corner of the intersection, removed as unnecessary. The Court of Claims decided in favor of the claimants and against the state, the Appellate Division reversed and dismissed the claims, and this court, in turn, reversed the Appellate Division's determination. Underlying that decision is the thesis that, while the acts of the drivers might have been concurring causes of the accident, the negligence of the state in removing the sign was the proximate cause and that, had the sign been there, the driver would have obeyed it and avoided the accident. In *Eastman,* and in *Murphy* and *Nuss* as well — the latter two cases involving night collisions at unfamiliar crossings — it was the very absence of the stop sign which rendered the drivers unaware of the need to stop before proceeding across the inter-section. The failure to maintain a stop sign, therefore, was found in each instance to be the very direct and proximate cause of the accident.

In the present case, on the other hand, the circumstances were such that the absence of a stop sign had no bearing on the happening of the accident. Unlike the drivers in the other cases, Miss Steinmiller was fully aware of the dangerous inter-section and of the need to stop.

It was a clear day, with good visibility, and she knew about the intersection. Aware that she was approaching 96A, she began to slow up some 20 feet from the corner; she glanced to her left and, her view partially obstructed, saw no car coming from that direction. She then looked to her right; she saw the Greyhound bus coming from the south and braked her car to a stop about a foot and a half on the pavement of 96A. She was undoubtedly waiting for the bus to go by in the furthermost lane, under the impression that there was no traffic in the lane where she had brought her car to a halt. She was, of course, in error, and, since — when she was on Fisk Road about 10 feet west of 96A — she had a sight distance of nearly 600 feet to the north, she would have seen the McGuire car had she looked again in that direction. Consequently, it becomes obvious, the accident occurred only because she neglected to look to the north at a point where the parked cars did not interfere with her view.

A moment's analysis serves to confirm this. Had the stop sign been in place, we presume that Miss Steinmiller would have

observed its injunction. But that is precisely what she did do. She knew that the intersection with the state road was just ahead; she knew that she was going to turn left on it; and she knew that she would have to stop before making the turn. She, therefore, had all the warning, all the notice of danger, that a stop sign would have afforded. Its absence did not cause her to do anything other than she would have done had it been present. She had been driving very slowly on Fisk Road and she started to bring her car to a stop some 20 feet before the intersection. The sign would have called for no different action. Certainly, it is not necessary to come to rest abreast of it; its purpose is simply to require a vehicle approaching an intersection " to stop at the corner or * * * pause at a point where visibility is adequate to assure safety in undertaking the crossing." (*McLean* v. *McKinley,* 282 App. Div. 138, 140; 307 N. Y. 661, 920.) The mistake made by Miss Steinmiller, and no omission on the part of the state induced or contributed to it, was that she drove a foot and a half into 96A to observe the traffic, instead of stopping on Fisk Road and looking to her left at a point where she would have had an unobstructed view to the north. Although, since this is a weight of evidence case, we need not go so far, we believe it may fairly be said that there is not the slightest basis in this record for inferring that she would have stopped a single foot before she did had the sign been posted.

In short, the physical conditions and the operator's own awareness of them, and of what was required of her in making a left-hand turn, prescribed the same course of action as a stop sign would have. She went into the lip of 96A before bringing the car to rest, not because the sign was missing, but because she had failed to look north at a point where visibility was adequate. The absence of a stop sign contributed not one whit to the collision. The weight of evidence plainly supports the finding of the trial court that it was Miss Steinmiller's negligence which was the sole and proximate cause of the accident.

The judgments of the Appellate Division should be reversed and those of the Court of Claims reinstated, without costs.

FROESSEL, J. (dissenting). We dissent and vote to affirm the judgments of the Appellate Division, upon the ground that the State was concurrently negligent with Miss Steinmiller, and that ·

the absence of the " stop " sign, referred to in the prevailing opinion, was a proximate cause of these unfortunate accidents. Said sign was erected pursuant to the January, 1949, orders of the New York State Traffic Commission. It was maintained until September, 1951, when struck down by an automobile. Although the State Highway Department was notified the same day, it failed to re-erect or repair said sign. Such failure clearly amounted to negligence on the part of the State.

The Court of Claims found that Miss Steinmiller " had never driven along Fisk Road toward Route 96-A in that direction prior to this occasion ". She stated three times that *she did not slow down until she saw she was entering* Route 96A. She was then but 20 feet westerly therefrom. She did not come to a stop *prior* to reaching into Route 96A, when she saw the Greyhound bus approaching from her right. She was not sure whether she applied her brakes, nor whether she was at a standstill at the time when her car was 1½ feet out into Route 96A and when she was hit by the McGuire car approaching from her left. Under these circumstances, it is crystal clear that Miss Steinmiller did not have, in the language of the majority, " all the warning, all the notice of danger, that a stop sign would have afforded ".

In the prevailing opinion it is said " there is not the slightest basis " for inferring that, had the sign been in place, Miss Steinmiller would have stopped before proceeding a foot and a half into the intersection, and that the purpose of a stop sign is simply to require a vehicle to " ' pause at a point where visibility is adequate to assure safety in undertaking the crossing.' " The law is clearly otherwise. Section 95-d of the Vehicle and Traffic Law provides, so far as pertinent:

" It shall be *unlawful* for the driver of any vehicle *to enter upon* or cross a state highway from an intersecting road or highway upon which such a *stop sign is erected without first* having brought the vehicle to a *full stop at or close to* the intersection of such state highway. A person having stopped as directed by such a stop sign shall proceed with caution so as not to interfere with or endanger traffic. A sign bearing the word ' stop ', with or without explanatory words, shall be sufficient under this section *to require a full stop.*

" Any person *failing to obey* any provision of this section or *any sign,* signal or marking established pursuant to this section shall be deemed *guilty* of violating this section and upon *conviction* shall be subject to the penalties [elsewhere provided]." (Emphasis supplied.)

Section 95-d also provides that such sign " shall be plainly visible at all times for a distance of at least fifty feet ". Since the location of the old sign was 36 feet from the intersection, Miss Steinmiller would have had adequate warning of this dangerous intersection, had the sign been in place, when she was at least 86 feet from Route 96A. She would then have *known* it was necessary for her to come " to a full stop at or close to the intersection ", and that to have entered upon Route 96A without stopping would have been a violation of law.

The majority agree that had " the stop sign been in place, we presume that Miss Steinmiller would have observed its injunction. But that is precisely what she did do ". The facts are indisputably otherwise. She simply did not obey the mandate of the law, to wit, to bring her " vehicle to a full stop at or close to the intersection ". She went beyond it, and, because of this violation, the accident happened, and two lives were snuffed out. Thus the absence of the sign was the most proximate cause of this accident.

In the light of her testimony, the Court of Claims had no right to assume that she would not have obeyed the law, but it was undoubtedly influenced by the thought it expressed that " the courts have gone a long way on inferring ". Courts do not presume, either in civil or criminal cases, that people deliberately disobey the law when they are adequately cautioned. Such was the rationale behind our decisions in *Murphy* v. *De Revere* (304 N. Y. 922 [stop sign]); *Eastman* v. *State of New York* (303 N. Y. 691 [stop sign]); *Nuss* v. *State of New York* (301 N. Y. 768 [stop sign]); *Foley* v. *State of New York* (294 N. Y. 275 [traffic signal]); *Barna* v. *State of New York* (293 N. Y. 877 [warning sign]); *Van de Walker* v. *State of New York* (278 N. Y. 454 [warning sign]).

In those cases we held that the absence of an appropriate " stop " or warning sign constituted negligence on the part of the State or other governmental agency, and was a proximate cause of the accident that happened in each case. Such is the

situation here, where the evidence was clear that the State negligently failed to maintain the sign in question, and that Miss Steinmiller, in the absence of such warning sign on this first occasion that she traveled this way, had approached the intersection, without coming " to a full stop at or close to the intersection "; the only reasonable inference which could be drawn was that the State's negligence was a proximate cause of the accident.

The Appellate Division properly applied the law, and its determination of the facts was supported by the overwhelming weight of the evidence. The judgments appealed from should be affirmed, with costs.

DESMOND, DYE, VAN VOORHIS and BURKE, JJ., concur with FULD, J.; FROESSEL, J., dissents in an opinion in which CONWAY, Ch. J., concurs.

Judgments reversed, etc.