■ ANNE McDONOUGH, as Administratrix of the Estate of ROBERT M. McDONOUGH, Deceased, Respondent, v. H. MELVILLE BRUSH et al., Doing Business as MUNICIPAL MACHINERY COMPANY, et al., Defendants; and NASSAU TROTTING ASSOCIATION, INC., et al., Appellants.— In a consolidated action to recover damages for wrongful death, the appeal is from so much of a judgment as was entered on a jury verdict for $70,000 in favor of the administratrix against appellants. Judgment insofar as appealed from reversed on the law, without costs, and complaint dismissed. The findings of fact are affirmed. The appellant Nassau Trotting Association, Inc., is the tenant of a huge parcel of real property known at Roosevelt Raceway and the operator thereon of a harness racing enterprise. The appellant Roosevelt Parking Co., Inc., as a subtenant, operates parking fields within the confines of the property. A broad roadway on the property, known as Avenue B, leads southeasterly from a point near a public highway through parking areas towards a cyclone fence marking the westerly boundary of an enclosure in the rear of a grandstand. Shortly before 1:00 A.M. on August 9, 1953, a motor vehicle without headlights, proceeding along this route at a fast and accelerating pace, continued straight ahead along Avenue B and through a closed metal gate in the fence. The area was well illuminated. The motor vehicle struck the gate with such force as to cause it to explode. The motor vehicle continued for 75 feet. A piece of metal flying from the exploded gate fatally injured the intestate, who was in the enclosure. The sole and exclusive cause of death was the negligence of the operator of the motor vehicle. Furthermore, the proof establishes, in accordance with denials in the answer, that appellant Roosevelt Parking Co., Inc., had nothing to do with ownership, maintenance or control of Avenue B, the fence, the gate, the enclosure, or the illumination thereof. Wenzel, Acting P. J., Murphy and Ughetta, JJ., concur; Hallinan and Kleinfeld, JJ., concur in the reversal of the judgment insofar as appealed from but dissent from the dismissal of the complaint and vote to grant a new trial, with the following memorandum: In our opinion the verdict of $70,000 in favor of respondent was excessive and a verdict of $50,000, under the circumstances of this case, would be adequate. We would therefore vote to affirm a judgment so reduced by respondent's appropriate stipulation, for the reasons indicated below. The proof gives rise to varying inferences and to questions of fact as to appellants' negligence and as to the intestate's freedom from contributory negligence. In our opinion, to exculpate appellants from liability is to convert the intestate, who stood in no position derived from the status or actions of the vehicle's operator, from his capacity of a victim into a joint participant in tortious conduct, bound by her acts. Concededly, the intestate was a business visitor within the enclosure to whom appellants owed the duty of reasonable care, and their obligation to him as such business visitor, lawfully on their private way, was the same as that owed to one using a

public highway (*Dack* v. *Trustees of Peekskill Military Academy*, 247 **App.** Div. 797). The appellants, as invitors of large numbers of people for gain or profit, were also bound vigilantly to accord to those assembled on their premises protection against acts occurring " which by their nature might cause a menace to safety" (*Tantillo* v. *Goldstein Bros. Amusement Co.*, 248 N. Y. 286, 290). They may not evade their responsibilities by attributing all blame to the motorist. Under the testimony, differing inferences could be drawn, *inter alia*, as to the motorist's speed and sobriety, the appellants' responsibility for her presence on the Avenue B route which contained no warnings that the route abruptly terminated at the fence and required a sharp right turn into another interior roadway, maintained by appellants, and the extent to which the appellants exercised restraint over her actions as incidental to their acknowledged control over the roadway and the enclosure. Under such circumstances, the issues of liability were properly left for the jury (*Applebee* v. *State of New York*, 308 N. Y. 502, 506–507; *Adress* v. *Mormando*, 243 App. Div. 451). It was solely for the jury to determine whether several acts or omissions had been mingled in producing a result harmful to the intestate (*Carlock* v. *Westchester Light. Co.*, 268 N. Y. 345, 349), and to define whether any set of circumstances was the sole proximate cause of the accident or a concurring cause (*Kelly* v. *Watson Elevator Co.*, 309 N. Y. 49, 51; *Swensson* v. *New York, Albany Desp. Co.*, 309 N. Y. 497, 505). The acts of two defendants may coalesce to produce an identical harm to an injured person even though the liabilities of the actors arise as a consequence of separate and distinct duties to such person and to each other (*Employers' Liability Assur. Corp.* v. *Post & McCord*, 286 N. Y. 254, 264, 265; *Arnold* v. *State of New York*, 163 App. Div. 253; *Keizor* v. *City of New York*, 278 App. Div. 711, affd. 303 N. Y. 649). In our view, appellant Roosevelt Parking Co., Inc., may not now be heard to disclaim dominion over Avenue B, the fence, the gate, the enclosure or the illumination thereof in view of its trial counsel's assurance to the Trial Justice that there was no dispute by the appellants that the right parties were before the court.