■ DOROTHY DERINGER et al., Appellants, v LINDA ROSSI, Defendant, and CITY OF NEW YORK, Respondent. LINDA ROSSI, Appellant, v CITY OF NEW YORK, Respondent. [689 NYS2d 68] —Order, Supreme Court, New York County (Robert Lippmann, J.), entered on or about November 17, 1998, to the extent that it granted defendant City's motion for summary judgment, unanimously reversed, on the law, without costs, the motion denied, and the complaints reinstated as against said defendant.

Plaintiffs were injured in October 1987 when the right front

wheel of their car hit a low-rising traffic island at the intersection of West and West Houston Streets in Manhattan, and spun out of control. Trapezoidal in shape, its point facing the oncoming flow of southbound traffic on West Street, the concrete device, with its graduated curb, is described in the Uniform Traffic Control regulations (17 NYCRR 262.20 [f] [1]) as a "channelizing island," whose primary function is "to control and guide a motorist into the proper lane" and "to promote an orderly flow of traffic" headed in the same direction. Plaintiffs' expert traffic engineer attested to the fact that the 1982 plans called for a "No Left Turn" sign and a pedestrian signal device to be posted on this traffic island. There are indications that at one time at least one traffic sign did rise from the center of the island; the post hole has since been cemented over. A "No Turns" sign now rises from a pedestrian refuge island to the left of the lane in which the accident occurred.

In granting summary judgment, the Nisi Prius Judge was persuaded that the City had no notice of any hazardous condition vis-à-vis the traffic island. There is a principle of qualified immunity that prevents a trier of facts from second-guessing the planning decisions of governmental bodies regarding such operations as traffic control and regulation (*Weiss v Fote*, 7 NY2d 579). This does not, however, absolve a municipality of its obligation to review its traffic plans periodically, in the interest of public safety, for the purpose of becoming aware of and remedying dangerous conditions (*see, Friedman v State of New York*, 67 NY2d 271). Such presumptive immunity can be overcome by notice of a history of accidents at the site (*see, e.g., Gregorio v City of New York*, 246 AD2d 275, *lv granted* 255 AD2d 1018). The City successfully focused its argument upon the absence of any such history.

However, the court erred when it overlooked evidence of actual notice in the record—a decision by the City's traffic planners, well before the date of the accident, to remove this island. Once a municipality determines to remedy a potentially dangerous traffic condition, any delay in doing so can expose the municipality to liability, notwithstanding the qualified governmental immunity (*Pizzi v City of New York*, 156 AD2d 438). The map of the area, prepared for the Bureau of Traffic Operations in August 1982, bears the hand-printed notation (referring to the traffic island in question), "CONC. MALL TO BE REMOVED BY HIGHWAYS". A later photocopy of this map confirms the presence of this notation when the map was revised in May 1988 and again in May 1991, thus virtually eliminating the

possibility that the City's intention to remove the island did not predate the accident. A pre-existing plan to remove a potentially hazardous condition takes the place of a history of accidents at the site, for the purpose of establishing notice.

Furthermore, photographs of the accident scene taken a few days after the crash, although not conclusive, appear to indicate that the "gradually diverging markings" called for at an approach to a traffic island (17 NYCRR 262.20 [i] [2]), in order to assure its visibility (17 NYCRR 262.20 [b] [4]), had faded and virtually disappeared with the passage of time. Once the City undertakes to install safety markings at a hazardous location, proper maintenance of those indicators becomes a continuing duty (*Nowlin v City of New York*, 81 NY2d 81). Failure to maintain these warning indicators over a period of time constitutes constructive notice of a dangerous condition (*see, Lesser v Manhattan & Bronx Surface Tr. Operating Auth.*, 157 AD2d 352, 357, *affd sub nom. Fishman v Manhattan & Bronx Surface Tr. Operating Auth.*, 79 NY2d 1031).

There exist triable issues of fact whether the City's own long-standing plan to remove the traffic island prior to the accident constituted actual notice of a dangerous condition, and whether the City had constructive notice of such a deteriorating condition in maintaining the approach warnings as to create a traffic hazard (*Tanner W. v County of Onondaga*, 225 AD2d 1074).

We need not reach the issue of any prejudice by reason of the City's tardiness in moving for summary judgment on the eve of trial (*cf.*, CPLR 3212 [a]), after the impaneling of a jury. Plaintiffs waived this objection by cross-moving for partial summary judgment on liability. Accordingly, the complaints against the City must be reinstated for trial with the balance of the action. Concur—Ellerin, P. J., Williams, Wallach and Andrias, JJ.