■ KEVIN CHANG, Appellant, v CITY OF NEW YORK et al., Respondents, et al., Defendant. [37 NYS3d 236]—

Order, Supreme Court, New York County (Margaret A. Chan, J.), entered September 9, 2014, which, upon reargument, adhered to its original decision granting defendant City of New York's motion for summary judgment dismissing the complaint as against it, modified on the law, to deny the City's motion for summary judgment and to reinstate the complaint as against it, and otherwise affirmed, without costs. Orders, same court (Arlene P. Bluth, J.), entered March 24, 2015, which granted defendants Fund for Park Avenue (New York), Inc.'s and City-Scape Landscaping's motions for summary judgment dismissing the complaint as against them, affirmed, without costs.

In this case arising from a motor vehicle accident, plaintiff alleges that defendant City is liable for his injuries because the intersection at Park Avenue and East 65th Street lacked a "stop here on red sign" and a stop bar. Plaintiff also alleges that the City and defendants Fund For Park Avenue (New York), Inc., and City-Scape Landscaping are liable for his injuries, because they were responsible for maintenance of the foliage in the center median at the subject intersection and that he was prevented from seeing oncoming traffic because the foliage was overgrown.

In 1996, the City had determined that "stop here on red" signs, with a stop bar, should be placed at the Park Avenue intersection where plaintiff was involved in a 2008 motor vehicle accident that also resulted in his girlfriend's death. It is undisputed that although those signs were present at the

intersection less than two months prior to the accident, they were not present on the date of the accident and a stop bar was never installed.

The state has a nondelegable duty to maintain the roadway in safe condition (*see Friedman v State of New York*, 67 NY2d 271, 283 [1986]; *Deringer v Rossi*, 260 AD2d 305 [1st Dept 1999]). The installation of a traffic control signal, where it had not previously existed, is a discretionary governmental function that does not give rise to state liability (*Cimino v City of New York*, 54 AD2d 843 [1st Dept 1976], *affd* 43 NY2d 966 [1978]). However, liability is imposed where there is a "failure properly to maintain an already established [traffic] control" and where that failure was a proximate cause of the accident (*Cimino*, 54 AD2d at 844). In *Eastman v State of New York* (303 NY 691 [1951]), the State had maintained a stop sign but then ordered the sign to be removed pursuant to a survey by the State Traffic Commission four years prior to the accident. The Court of Appeals held that the State's failure "to maintain adequate signs or other proper traffic control" resulted in a breach of duty and was a proximate cause of the accident (*id.* at 692; *compare Weiss v Fote*, 7 NY2d 579 [1960] [distinguished on different facts]). The Court clarified that, had the traffic control sign been present in *Eastman,* "the driver would have obeyed it and avoided the accident" (*Applebee v State of New York*, 308 NY 502, 507 [1955]).

The dissent opines that the City is not liable because plaintiff's own action eliminated any alleged negligence by the City as a proximate cause of his accident. However, the Court of Appeals, in *Applebee*, stated that the State can be held liable where it failed to repair or replace a missing traffic control sign, particularly where the driver had never been at the intersection and therefore lacked the notice of danger that a stop sign would have provided. Although the Court in that case held that the State's failure to replace a missing stop sign, which had been knocked down as a result of an accident that occurred seven weeks before, was not the proximate cause of the accident, *Applebee* is distinguishable on its facts. In *Applebee*, the driver, who was on her way home after visiting a friend on a Sunday afternoon, was familiar with the road and route and "was fully aware of the dangerous intersection and of the need to stop" (*id.* at 507). Specifically, the driver was returning by the same route by which she had come and "knew that it was heavily traveled by automobiles at high speeds" (*id.* at 506 [internal quotation marks omitted]). The Court found that because the driver had "all the warning[ ] [and] all the notice

of danger, that a stop sign would have afforded," the State's failure to replace the sign did not proximately cause the accident (*id.* at 508).

The Court of Appeals distinguished *Applebee* from cases in which the drivers had never been at the intersections before the accident and therefore had no familiarity with the dangerous conditions and of the need to stop. In *Murphy v De Revere* (304 NY 922 [1953]) and *Nuss v State of New York* (301 NY 768 [1950]), "two cases involving night collisions at unfamiliar crossings[,] it was the very absence of the stop sign which rendered the drivers unaware of the need to stop before proceeding across the intersection" and proximately caused the accidents (*Applebee* at 507). Similarly, the Court in *Rose v State of New York* (19 AD3d 680, 680 [2d Dept 2005]) held that the driver's "familiarity with the ramp, coupled with his excessive speed" eliminated any negligence by the State as a proximate cause of the accident. Thus, in determining whether a driver had full notice of danger that a traffic control would have provided, New York courts have considered a driver's familiarity with the road and route as a relevant factor.

Here, in failing to reinstall a previously established traffic control, the City breached its nondelegable duty to maintain the roadway in safe condition (*see Friedman* at 283; *Deringer*, 260 AD2d at 306 [1999]). Plaintiff testified that he had never been to the intersection before the accident. Plaintiff also testified that, when he started to turn across the Park Avenue median at the intersection, he was "confused" as to whether or not the lights facing eastward traffic on E. 65th Street controlled plaintiff's movements. The dissent argues that the familiarity of the intersection of the *Applebee* driver has no import in the instant matter. According to the dissent, plaintiff had all the notice of danger that a "stop here on red" sign and stop bar would have afforded him, because plaintiff had stopped before entering the intersection but continued to proceed knowing that he needed to yield to oncoming traffic. The dissent cites the *Applebee* Court's reasoning that "the physical conditions and the operator's own awareness of them, and of what was required of [him] in making a left-hand turn, prescribed the same course of action as a stop sign would have" (*Applebee*, 308 NY at 508). However, the presence of a "stop here on red" sign would have likely prescribed a different course of action. A "stop here on red" goes beyond what a stop sign commands and prescribes that a driver remain fully stopped until the controlling traffic light turns green. It also indicates to a driver that oncoming traffic must stop before the intersection, and that the

driver is protected from oncoming traffic. Thus, it was foreseeable that, absent a sign directing drivers to stop in the median area "on red," motorists would proceed across northbound traffic, rather than wait at the median for the red light controlling the cross street to change to green (*see Heffler v State of New York*, 96 AD2d 926 [2d Dept 1983]).

In light of plaintiff's testimony that he was confused by which lights controlled his movements, a question of fact exists as to whether plaintiff had all the notice of danger that a stop sign would have afforded and as to whether the City's failure to install the required "stop here on red" signs at the intersection was a proximate cause of the accident, even if plaintiff's conduct was also negligent and a proximate cause of the accident (*Alexander v Eldred*, 63 NY2d 460, 463-464 [1984]; *Bailey v County of Tioga*, 77 AD3d 1251 [3d Dept 2010]).

Plaintiff's testimony demonstrates that he was able to see one block down Park Avenue before he entered the intersection. As such, defendants Fund for Park Avenue (New York), Inc. and City-Scape Landscaping did not proximately cause the accident. Concur—Acosta, Manzanet-Daniels, Gische and Gesmer, JJ.

Sweeny, J., dissents in a memorandum as follows: Because plaintiff's own actions were the proximate cause of the motor vehicle accident herein, I would affirm the motion court's dismissal of the complaint in its entirety.

At approximately 3:30 a.m. on June 29, 2008, plaintiff, a New Jersey resident who had never driven through the intersection in question, was driving southbound on Park Avenue. When he reached the intersection of Park Avenue and East 65th Street, he initiated a left-hand turn, intending to proceed eastbound on East 65th Street. At this intersection, Park Avenue's northbound and southbound lanes are separated by a median island and both Park Avenue and East 65th Street are controlled by traffic lights. Each island was lined, behind the pedestrian crossing area and there is an area of planted flowers and shrubs, which were planted and managed by defendant the Fund for Park Avenue (the Fund) and maintained by defendant City-Scape Landscaping (City-Scape). The islands are approximately 20 feet wide.

Plaintiff testified that when he turned into the median area separating the northbound and southbound lanes of Park Avenue, he stopped about five feet short of the northbound lanes to see if there was any oncoming traffic in the northbound lanes on Park Avenue, which was on his right side, but the shrubbery on the median island obstructed his view. He stated

that he remained stopped in the median area for approximately 10-15 seconds as he looked to his right but could not get a clear view of traffic on the northbound lanes of Park Avenue. Plaintiff then "inched" forward three to four feet toward the northbound lane of travel, trying to get a better view, before stopping his vehicle again, short of entering the intersection. Although he could "barely" see the oncoming traffic, he decided to proceed. He stated he could clearly see for approximately one block down Park Avenue as he was proceeding and there were no bushes obstructing his view as he made the turn and continued toward East 65th Street. He was in the intersection about five seconds and approximately halfway across Park Avenue when his vehicle was struck by a pickup truck traveling northbound on Park Avenue. Plaintiff alleges that he did not see the truck until "a split second" before the collision. The driver of the truck that struck plaintiff's vehicle, who was intoxicated at the time of the accident, testified that he was traveling northbound on Park Avenue in favor of a green light. He saw plaintiff's vehicle about five seconds before the collision and that it "just turned" onto Park Avenue and did not slow down or stop when it entered the median. He believed plaintiff's vehicle was going to stop because it had a red light.

Plaintiff testified that he believed the two traffic lights facing traffic crossing 65th Street did not control his movement, since he "thought it pertained to the traffic coming on 65th Street, going across 65th Street," and not the traffic on Park Avenue. He stated "there were no signs to alert [him] to stop or go on to the street" and the lack of signs "confused [him] if [he] should go or stop at the light." He acknowledged that he had an unobstructed view of the red traffic light governing traffic on East 65th Street and that, as a result, he also knew that northbound traffic on Park Avenue had a green light and therefore, the right of way. He further stated that he was looking straight ahead and did not look to his right as he entered the northbound lanes.

Plaintiff alleges that defendant City is liable for his injuries because the intersection at Park Avenue and East 65th Street lacked a "stop here on red sign" and a stop bar. Plaintiff also alleges that the City and defendants Fund and City-Scape are similarly liable because their failure to properly maintain the foliage in the center median at the subject intersection caused it to become overgrown and obscured his vision of oncoming traffic.

The City acknowledges that "stop here on red signs" were supposed to be present at the intersection in question pursuant

to the sign order in effect at the time of the accident and that those signs were not present when the accident occurred. Although the City could not explain why they were not present on the date of the accident, it produced inspection records showing the signs were present some 53 days prior to the accident. The City, Fund and City-Scape defendants all stated that no complaints had been received regarding any visual obstructions resulting from the shrubbery at that location.

It is axiomatic that "[a] municipality has the nondelegable duty of maintaining its roads and highways in a reasonably safe condition" (*Stiuso v City of New York*, 87 NY2d 889, 890 [1995]) and that liability will flow for injuries that result from a breach of that duty (*Lopes v Rostad*, 45 NY2d 617, 623 [1978]). This duty extends to an obligation to "trim growth within the highway's right-of-way to assure visibility of stop signs and other traffic" (*Federoff v Camperlengo*, 215 AD2d 806, 807 [3d Dept 1995] [internal quotation marks omitted]). Inadequate sight distance caused by obstructing foliage will result in municipal liability for negligent roadway maintenance (*see Parada v City of New York*, 205 AD2d 427, 428 [1st Dept 1994]). This municipal duty is not excused because the dangerous condition is attributable to the acts and/or omissions of the municipality's contractors (*see Levine v New York State Thruway Auth.*, 52 AD3d 975, 976-977 [3d Dept 2008]). However, "[a] government is not the insurer of the safety of its roads and no liability will attach unless the government's negligence in maintaining its roads in a reasonable condition is a proximate cause of the accident" (*Galligan v Long Is. R.R. Co.*, 198 AD2d 399, 400 [2d Dept 1993]; *see Stanford v State of New York*, 167 AD2d 381, 382 [2d Dept 1990], *lv denied* 78 NY2d 856 [1991]).

In this case, plaintiff's own testimony negates the visual obstruction of the shrubbery as the proximate cause of the accident. Although he testified that the shrubbery had initially blocked his view of the on-coming traffic, he also testified that he inched forward so he could see past the bushes before making the turn, that he was able to see one block down Park Avenue before he entered the intersection, and that the accident did not happen until he had determined that it was safe to enter it. This is a different situation from that in *Parada* where the shrubbery prevented a clear view of the intersection, and where that plaintiff proceeded in an "unbroken turn to the point of impact" (*Parada*, 205 AD2d at 428). Furthermore, in *Parada* there was a prior request from the Department of Transportation to the entity maintaining the median to prune

the trees. Here, as noted, there were no complaints to any defendant about the shrubbery needing pruning or other attention.

The absence of "stop here on red" signs also was not a proximate cause of the accident.

The majority emphasizes plaintiff's testimony regarding his unfamiliarity with the intersection. Plaintiff stated he was confused as to whether to stop or to go as he entered the intersection due to the lack of traffic signs. The majority contends that as a result of this failure, the City breached its nondelegable duty to keep its roads in a safe condition. This misses the point.

As with the situation involving the shrubbery, plaintiff's own testimony establishes that there is a lack of a causal connection between the missing traffic control devices and the happening of the accident. Plaintiff's testimony established that he was not only fully aware of the need to stop at the intersection, but accepting his testimony at face value, he did in fact stop. Moreover, his testimony was clear that he knew he had to yield to oncoming traffic on the northbound side of Park Avenue because that traffic had a green light. Significantly, he testified that despite knowing that oncoming traffic had a green light, he proceeded into the intersection when he deemed it safe to do so.

A municipality may be held liable where "it is shown that its failure to install a traffic control or warning device was negligent under the circumstances, that this omission was a contributing cause of the mishap, and that there was no reasonable basis for the municipality's inaction" (*Alexander v Eldred*, 63 NY2d 460, 463-464 [1984]). However, the municipality will not be held liable where a plaintiff's own actions in maneuvering his vehicle eliminates as a proximate cause of his accident any alleged negligence by the municipality (*see Rose v State of New York*, 19 AD3d 680 [2d Dept 2005]; *Parmeter v Bedard*, 295 AD2d 779, 780 [3d Dept 2002], *lv denied* 98 NY2d 614 [2002]). "Such proximate cause may be found only where it is shown that 'it was the very absence of the stop sign [or other traffic control device] which rendered the driver[ ] unaware of the need to stop before proceeding across the intersection' " (*Noller v Peralta*, 94 AD3d 830, 832 [2d Dept 2012], quoting *Applebee v State of New York*, 308 NY 502, 507 [1955]). "Where, however, the driver 'had all the warning, all the notice of danger, that a stop sign would have afforded,' there is no basis for finding that the absence of a sign caused the driver 'to do anything other than [he or] she would have done had it been present' " (*id.*, quoting *Applebee* at 508).

Even assuming that a duty had been established on the part of the City for failing to have a "stop here on red" sign and a stop bar present at the intersection, the record shows that a proximate cause of the accident was not the absence of traffic control devices at the scene, but rather the manner in which plaintiff operated his vehicle (*see Owens v Campbell*, 16 AD3d 1000, 1001-1002 [3d Dept 2005], *lv denied* 5 NY3d 704 [2005]) as well as the actions of the driver of the truck that struck plaintiff's vehicle. Plaintiff's own testimony, as noted above, unequivocally demonstrates that he had all the notice of the danger that a "stop here on red" sign and a stop bar would have afforded him before he decided to enter the intersection. He knew that he did not have the right of way (*see Applebee*, 308 NY at 502), yet proceeded into the intersection despite that fact. The City's failure to properly install or maintain signage was therefore not the proximate cause of this accident.

The fact that the driver in *Applebee* was familiar with the intersection is of no import as it impacts this case. As the Court observed, "the physical conditions and the operator's own awareness of them, and of what was required of [him] in making a left-hand turn, prescribed the same course of action as a stop sign would have . . . The absence of a stop sign contributed not one whit to the collision" (*id.* at 508) and that it was plaintiff's negligence combined with the truck driver's negligence which was the proximate cause of this accident.

It should also be noted that plaintiff testified that, as he entered the intersection, he did not look in the direction of oncoming traffic, but was looking straight ahead, thus exhibiting a lack of care. "A driver is negligent where an accident occurs because he or she fails to see that which through proper use of his or her senses he or she should have seen" (*Mohammad v Ning*, 72 AD3d 913, 915 [2d Dept 2010] [internal quotation marks and brackets omitted]). This testimony further highlights the lack of a causal connection between the missing traffic control device and the happening of the accident (*Owens*, 16 AD3d at 1001-1002; *see Cimino v City of New York*, 54 AD2d 843, 844 [1st Dept 1976]).

I would therefore affirm the motion court's dismissal of the complaint against these defendants. 