■ TIMOTHY G. SMART, an Infant, by LYLE B. SMART, His Father and Natural Guardian, et al., Respondents, v JOSEPH W. WOZNIAK et al., Appellants. (Appeal No. 1.)—Judgment unanimously affirmed, with costs. Memorandum: These appeals arise from an automobile collision which occurred on February 7, 1971 at the intersection of two county roads lying in the Town of Oakfield in Genesee County. As a car driven by Donna J. Smart was proceeding northerly through the intersection on Albion Road it collided with a car driven by Joseph M. Wozniak, who had emerged in an easterly direction from Lockport Road. Eastbound traffic on Lockport Road was controlled by a stop sign. There was no traffic control device for Albion Road at the intersection. Defendant Wozniak testified that he stopped at the stop sign; that his view of Albion Road to the right, or south, was obstructed by a snowbank and brush along the southwest corner of the intersection; that he rolled forward at perhaps 5 or 10 miles per hour without touching the accelerator, his view remaining obstructed until his front wheels were on Albion Road; that he then saw the Smart vehicle several car lengths away and approaching at 35 or 40 miles per hour; that he applied his brakes but skidded forward on the snow-covered pavement and was struck by the Smart vehicle. Donna J. Smart testified that her vision was also obstructed by the snowbank as she approached the intersection. She and her infant son, Timothy G. Smart, sustained injuries as a result of which two actions were commenced. The first, brought by Lyle B. Smart individually and as father of Timothy, sought damages against defendants Donna Smart, Wozniak, the town and the county, and resulted in jury verdicts against all defendants except Donna Smart, in whose favor a verdict of no cause of action was returned. The second action, commenced by Donna Smart against Wozniak, the town and the county, resulted in verdicts in her favor against all three defendants. In each action the jury apportioned the damages 10% to Wozniak, 40% to the town and 50% to the county. The verdicts are not contrary to law or against the weight of the evidence as they affect any of the appealing defendants. The jury could reasonably have found that a proximate cause of the collision was Wozniak's negligent failure to stop as required by subdivision (a) of section 1142 and subdivision (a) of section 1172 of the Vehicle and Traffic Law. Mrs. Smart, knowing of the presence of a stop sign at Lockport Road, was entitled to assume that hers was a favored route and that a driver approaching simultaneously from the disfavored direction would obey the sign's mandate (cf. *Villa v Vetuskey,* 50 AD2d 1093, 1094; *Mansfield v Graff,* 47 AD2d 581, 582). Whether her speed was reasonable under the conditions (Vehicle and Traffic Law, § 1180) was a question of fact for the jury *(Beveridge v Spier,* 32 AD2d 920). The

liability of the county rests upon its duty to take reasonable measures to correct "a condition on or adjacent to the highway" which "renders it unsafe for persons using it in the exercise of reasonable care" *(Meil v Syracuse Constructors,* 19 AD2d 10, 13; see Highway Law, § 139). This duty extends not only to conditions on the traveled pavement but also to conditions adjacent to or above the highway which may reasonably be expected to result in injury to users *(Julian v State of New York,* 187 Misc 146, 148; see *Woodcock v County of Niagara,* 52 AD2d 1087; *Arno v State of New York,* 20 Misc 2d 995, 997). The evidence showed that under a contract between the county and the town pursuant to section 135-a of the Highway Law, ice and snow removal on county roads, but not brush removal, was done by town employees. The specifics of snow control were left to the judgment of the town highway superintendent, who testified that he inspected the county roads at least twice daily; that the subject intersection was plowed February 1, 1971; that the height of the snowbank at the southwest corner was about two feet and did not change between February 1 and February 7, 1971; and that it was his practice to have snowbanks cut down if they were in the right of way and high enough to interfere with visibility. The town highway superintendent's testimony thus indicates that he had actual notice of the presence of the snowbank. There was other testimony to the effect that the snowbank was as much as five feet high at the time of the accident and that it did obstruct visibility in the manner described by Wozniak and Mrs. Smart. Upon the conflicting evidence, the jury could reasonably have found that the town was negligent in failing to remove or level the snowbank and that such failure was a proximate cause of the collision. Although it is true that the creation and maintenance of the snowbank were acts of the town and not the county, we nevertheless reject the county's contention that the verdict as to it is against the weight of the evidence. Irrespective of any independent contractor relationship with the town, the county retained a duty to inspect its roads, to advise and direct the town in its performance of the contract, and to take such measures as were required to protect the traveling public against road hazards foreseeable in the exercise of reasonable care (see Highway Law, § 102, subds [1], [2]; § 139; *Meil v Syracuse Constructors, supra).* This was a nondelegable duty owed by the county by the public (see *Storrs v City of Utica,* 17 NY 104, 108-109; *Schiverea v Brooklyn Hgts. R. R. Co.,* 89 App Div 340; 344-345; cf. *Miller v State of New York,* 231 App Div 363, 369; *Neddo v State of New York,* 194 Misc 379, 386-387, affd 275 App Div 492, affd without opn 300 NY 533). Furthermore, from the evidence the jury could have found that the brush on the side of the road and upon which snow rested was one of the causes of the accident. The obligation to cut and remove brush was solely that of the county. The jury could also find that the dangerous condition persisted for such a long period that the county was chargeable with notice (cf. *Julian v State of New York,* 187 Misc 146, 148-149, *supra),* and that its failure to conduct adequate inspection and supervision was negligence which was a substantial contributing cause of the collision. We find no abuse of discretion in the granting of the motion to increase the *ad damnum* clause. The motion was predicated not upon any change in the theory of the action but rather upon substituted counsel's re-evaluation of the infant plaintiff's very severe and serious injuries, which were known to defendants long prior to the motion. The delays were excusable, and the physicians' reports submitted in support of the motion fulfilled the purpose of physicians' affidavits *(Finn v Crystal Beach Tr. Co.,* 55 AD2d 1001; *Wesley v Bingel,* 55 AD2d 1010, 1011; *Soulier v Harrison,* 21 AD2d 725). Defendants cannot

claim surprise, having been afforded an opportunity to have the infant plaintiff re-examined by their physicians as a condition to the granting of the motion. Trial Term did not err in refusing to disqualify plaintiff Lyle B. Smart's attorney at the insistence of the town. The evidence taken on this matter supported the court's finding that the attorney had not had access to confidential information from the town which would render his continued representation of plaintiff unfair to the town (cf. *Tru-Brite Labs v Ashman,* 54 AD2d 345, 347). In the circumstances we find no merit in plaintiff-respondent's claim of error in the assessment of interest. The policy of finality and definiteness of judgments provided for in CPLR 5002 would be contravened by any result other than that reached by Trial Term. We have examined the appellants' remaining contentions and have found them lacking in merit. (Appeal from judgment of Genesee Supreme Court—negligence.) Present—Moule, J. P., Cardamone, Simons, Dillon and Goldman, JJ. [86 Misc 2d 940.]