■ ALICE SMITH, as Administratrix of the Estate of TAMARA L. SMITH, Appellant, v STATE OF NEW YORK, Respondent. (Claim No. 58659.) ALICE SMITH, Appellant, v STATE OF NEW YORK, Respondent. (Claim No. 58660.) ALICE SMITH, as Parent of KIMBERLY A. SMITH, Appellant, v STATE OF NEW YORK, Respondent. (Claim No. 58661.)—Appeals from judgments of the Court of Claims entered June 14, 1978, which dismissed claimants' claims. On August 25, 1972, a vehicle operated by Lawrence P. Smith was in collision with another vehicle at the intersection of Routes 8 and 9 in the Town of Chester in Warren County. Mr. Smith's wife, Alice Smith, and their two infant daughters, Tamara Smith and Kimberly Smith, were passengers

in the vehicle. As a result of the collision, Tamara Smith was killed and Kimberly Smith, Alice Smith and Lawrence Smith sustained personal injuries. The Court of Claims found adversely to the claimants. The passenger-claimants appeal. The accident occurred when claimants' vehicle, at about 8:20 P.M., proceeded north on Route 9, a minor road, past intersection warning signs and two oversized stop signs into the intersection and collided with a westbound vehicle on Route 8. The night was clear, the pavement was dry, and although dusk was approaching it was still daylight. The claims alleged that the State was negligent "in failing to adequately mark, sign and light the intersection * * * and in failing and neglecting to erect appropriate adequate traffic control devices at the aforesaid intersection." It was also alleged that the State had "knowledge of the dangerous condition of said intersection and failed and neglected to erect adequate traffic control devices." The Court of Claims found that the proximate cause of the accident was not the negligence of the State in maintaining the highway or in failing to guard against the hazards of the intersection. The court further found: "The sole proximate cause of the accident was the negligence of the claimant operator in failing to heed the stop signs, and in failing to come to a complete stop before entering the intersection, and to yield the right of way to the vehicle approaching the intersection from the through highway". The judgments should be affirmed since findings of the Court of Claims are amply supported by the evidence. The State's expert witness, Joseph Kelly, who since 1968 had been the regional traffic engineer for the area where the accident occurred, testified that he investigated complaints about the intersection. He stated that on November 6, 1968, oversized intersection warning signs were installed on the east and west approaches of Route 8 to the intersection and that a second oversized stop sign was installed on the left side of Route 9 facing northbound vehicular traffic. The regional engineer testified that after installation of the second stop sign, the accident frequency at the intersection decreased by 70%. At the same time, a "stop bar" and the word "stop" were painted on the pavement of Route 9 at the intersection. Mr. Kelly said that installation of a "stop ahead" sign was found to be unwarranted because there was "sufficient sight distance to observe the stop signs." He also stated that traffic counts taken in 1971 indicated no need for a higher degree of traffic control. He noted that "a full 50% of the traffic violating the stop sign was by motorists who apparently saw the stop sign, in that they slowed down, however, they did not make a full stop." Further, it was his opinion that the traffic control devices in use at the intersection at the time of the accident were in conformity with the standards of traffic control established in the Manual of Uniform Traffic Control Devices. The claimants' highway safety engineering expert testified that when he first observed the intersection, it "seemed perfectly clear and open," but upon careful examination "there was a feeling about it * * * that the first look didn't show what the intersection was." However, he also stated that the two oversized stop signs that faced claimant operator traveling north on Route 9 at the intersection were fairly obvious on approach. There was also testimony to establish the existence of a number of intersection warning signs facing claimants' vehicle as it proceeded north on Route 9 to the intersection. And finally, Mr. Smith had testified that he never saw the two oversized stop signs as he approached and went through the intersection or the intersection warning signs along Route 9. The State's expert asserted that these signs were plainly visible in the daylight to an approaching motorist. The record indicates that the State's experts made a rational study of the alternatives before making a determination of what

signing and traffic control devices were appropriate to use at the intersection and having done that, it cannot be held that the State was negligent in the planning of the highways, because an accident occurred at the intersection *(Weiss v Fote,* 7 NY2d 579, 588; *Proctor v State of New York,* 67 AD2d 1051).* Judgments affirmed, without costs. Mahoney, P. J., Greenblott, Kane, Main and Mikoll, JJ., concur.