■ TONI A. HEFFLER et al., Respondents, v STATE OF NEW YORK, Appellant. — Appeal from an interlocutory judgment of the Court of Claims (Lengyel, J.), dated July 27, 1982, which, after a trial on the issue of liability only, apportioned 75% liability to the State of New York and 25% liability to claimant Toni Ann Heffler for personal injuries and damages sustained in an automobile accident at the intersection of the Taconic State Parkway and Bryant Pond Road in the Town of Putnam Valley, Putnam County. Interlocutory judgment modified, on the facts, by apportioning 50% liability to the State and 50% liability to claimant Toni Ann Heffler. As so modified, interlocutory judgment affirmed, without costs or disbursements. The Court of Claims was correct in finding that the State created a dangerous condition at the intersection by the installation of a median divider, did nothing to correct it after it became aware of such dangerous condition, and that this was a proximate cause of the accident. Claimant Toni Ann Heffler was employed as a secretary in White Plains. Daily, in traveling to work, she drove westerly on Bryant Pond Road until it intersected the Taconic State Parkway where she turned left onto the parkway and followed it southerly to White Plains. On returning from work she retraced the same route. The intersection of Bryant Pond Road and the Taconic State Parkway, where the accident occurred on January 16, 1978, is a relatively straight section of the parkway with a long but gradual vertical curve, four lanes in width, divided by a box beam median barrier. There are no turning lanes and the intersection radii are quite short. There is a flashing amber beacon on the parkway and a flashing red signal on Bryant Pond Road. In addition to the red blinker, a stop sign at the northeast corner of

the intersection faces westbound traffic on Bryant Pond Road. There was evidence that in March, 1976, the Chief Engineer of the East Hudson Parkway Authority had notified the Regional Director of the Department of Transportation that an analysis of intersection accidents on the parkway revealed that, out of 62 intersections studied, Bryant Pond Road was "the most critical location * * * based on its having the greatest number of accidents and injuries, and the highest accident rate". Further, the chief engineer's report showed that prior to the installation of the median barrier in 1967-1968, there were three to four accidents a year at the intersection. But after the installation of the barrier, that number rose to an average of 11 accidents a year. This was the highest number of accidents on the parkway. The report also stated that "[f]rom earlier accident records, our own observations, and the complaints received from motorists, it is clear that a sight obstruction created by the median barrier is a major contributing factor. The crest vertical curve projects the barrier above the sight line of turning and crossing vehicles both to the north and to the south." As to the intersection itself, the report warned that "the narrow median does not provide a safe refuge for turning or crossing vehicles. Bryant Pond motorists must clear traffic in both directions simultaneously before crossing or turning left onto the Parkway." Thus, while the installation of the median barrier may have improved safety conditions generally along the parkway, it actually created a more dangerous condition at this particular intersection. It could be said that with respect to motorists traveling west on Bryant Pond Road and intending to go south on the parkway, the State had created a trap. The Court of Claims, in holding that New York State was 75% liable for the accident in question, did not predicate its finding on the alleged original negligent design or construction of the parkway, nor on any assertion that the median barriers were installed in 1967-1968 without adequate study or reasonable basis (cf. *Weiss v Fote*, 7 NY2d 579, 589; *Russell v State of New York*, 75 AD2d 907, affd 53 NY2d 986). The sole basis of its finding was the State of New York's "failure, after the barriers were installed, to take reasonable steps to modify the intersection once they knew of the dangerous condition created by the median barrier and lack of refuge; a danger that the State's 'safety experts' knew the flashing indicator had failed to correct". Consequently, the court found that the State's negligence was a proximate cause of the accident and claimant Toni Ann Heffler's injuries. There is no merit to the State's claim that the collision of a northbound vehicle with the claimant's car was an intervening act severing the State's liability for any negligence on its part. It is clear that the accident that occurred, including the participation of the other car, was foreseeable by the State based on its own statistics. In order for an intervening act to relieve a defendant of liability, it must be unusual and unexpected and not the usual and ordinary result of a situation caused by defendant's negligence. As the Court of Appeals noted in *Derdiarian v Felix Contr. Co.* (51 NY2d 308, 315): "Where the acts of a third person intervene between the defendant's conduct and the plaintiff's injury, the causal connection is not automatically severed. In such a case, liability turns upon whether the intervening act is a normal or foreseeable consequence of the situation created by the defendant's negligence (see *Parvi v City of Kingston*, 41 NY2d 553, 560; Restatement, Torts 2d, §§ 443, 449; Prosser, Law of Torts, § 44). If the intervening act is extraordinary under the circumstances, not foreseeable in the normal course of events, or independent of or far removed from the defendant's conduct, it may well be a superseding act which breaks the causal nexus (see, e.g., *Martinez v Lazaroff*, 48 NY2d 819, 820; *Ventricelli v Kinney System Rent A Car*, 45 NY2d 950, 952, *supra; Rivera v City of New York*, 11 NY2d 856). Because questions concerning what is foreseeable and what is normal may be the subject of varying inferences, as is

the question of negligence itself, these issues generally are for the fact finder to resolve." Here, the fact finder properly resolved this issue in favor of the claimants insofar as the liability of the State is concerned. However, the court also properly found that claimant Toni Ann Heffler was partially at fault for the accident due to a judgmental driving error which was a proximate cause of the accident. She was aware of the danger confronting a motorist traveling westerly on Bryant Pond Road intending to cross the northbound lane of the parkway for the purpose of a left turn into one of the southbound lanes. The sight obstruction caused by the median barrier, compounded by the lack of a safe turning refuge area between the northbound and southbound lanes of traffic, created what the court stated to be a "driving stress condition" which "foreseeably could cause a judgmental error in making the critical choice of go or stay". This stress condition at the time of the accident was also exacerbated by a pile of snow near the southeast corner of the intersection which partially obscured her vision when she had to make the critical choice to move or stay at the stop line. Thus, this error in judgment was a proximate cause of the accident. We hold that error in driving judgment by the claimant Toni Ann Heffler in proceeding into the intersection without taking the proper precautionary measures for observing any oncoming traffic when her vision was partially obscured was a concurrent proximate cause of the accident to the extent that it constituted 50% rather than 25% of the cause. We are, therefore, modifying the interlocutory judgment accordingly (see Court of Claims Act, § 24). Mollen, P. J., Weinstein and Rubin, JJ., concur.

Lazer, J., dissents and votes to reverse the interlocutory judgment and dismiss the claim, with the following memorandum: While proceeding west on Bryant Pond Road and crossing the northbound lane of the Taconic State Parkway to turn south, claimant Toni Ann Heffler's car was struck by a northbound vehicle. In her personal injury claim against the State, Heffler's principal focus was the State's negligence in the design of the Bryant Pond Road intersection and its failure to remove snow from the southeast corner of the intersection where it obstructed vision. After a trial on the issue of liability only, the Court of Claims found that the State had failed to take reasonable steps to modify the intersection even though its employees were aware of the dangerous condition created by the median barrier between north and southbound lanes. That barrier deprived westbound drivers crossing the parkway of a clear view of southbound traffic approaching from the right, a situation that was severely exacerbated by the lack of any refuge space between northbound and southbound lanes if southbound traffic suddenly appeared. Despite the fact that obstructed vision of southbound traffic coming from the right did not appear to be a factor in claimant's case because her car was struck from the left by a northbound car as soon as she entered the parkway, the Court of Claims found the State liable because the median barrier "placed an undue stress on a driver at the Bryant Pond Road intersection; a stress which foreseeably could cause a judgmental error in making the critical choice of go or stay". Furthermore, after finding that the State's failure to push snowbanks further back from the parkway was not negligence or even a proximate cause of the accident, the court determined that the snow partially obscured Heffler's vision and increased the dangers of the intersection. The State's liability was set at 75% and the claimant's at 25% based on her negligence in proceeding onto the parkway with a car approaching on the left. While my colleagues agree with the Court of Claims that the dangerous condition of the intersection caused the accident, they have reassessed liability at 50% for each side. I cannot agree, however, that the design of the median barrier and the lack of refuge space was a proximate cause of this collision since Heffler's view of the northbound car that struck her vehicle was not obstructed by the barrier and

refuge space never came into play. As to "stress" caused claimant by the design of the intersection, there is not an iota of evidence in the record concerning either her personal stress or that of any other person who ever entered the intersection. My disagreement with the majority concerning liability for the intersection design relates solely to proximate cause since proof of negligence was ample. At its intersection with Bryant Pond Road the parkway consisted of four lanes divided by a metal box beam median barrier approximately 27 to 30 inches high with three-inch-wide metal posts situated six feet apart. While the barrier separated northbound and southbound lanes, no actual median area actually exists between the lanes. Over the center of the intersection was a suspended flashing signal with a yellow indicator displayed to parkway travelers and a red indicator to Bryant Pond Road motorists. There was also a stop sign at the northeast corner of the intersection facing the westbound traffic on Bryant Pond Road. In a 1976 report by the Chief Engineer of East Hudson Parkway Authority, the intersection at issue was selected as the most critical intersection on the parkway, with the sight obstruction created by the median barrier a major contributing factor. The report also warned that "the narrow median does not provide a safe refuge for turning or crossing vehicles" so a driver intending to cross half the intersection before turning left was left without proper vision of oncoming traffic on the right and no place to hide if such traffic suddenly appeared. Although claimant's retrograde amnesia prevented her from remembering the circumstances leading up to the accident, she did produce eyewitness Andrew Schug, the operator of the vehicle immediately behind her when the accident occurred. Schug testified that a pile of snow three to three and one-half feet high set back one foot from the southeastern corner of the intersection "somewhat blocked" the view of the traffic in the northbound lane of the parkway. The snow had fallen on the Friday night and Saturday morning prior to the Monday morning accident. Schug noted that he could not get a good view of traffic until he was "partially into the intersection" about a foot or so over the stop line but behind the traveled portion of the parkway. Although proof and theory supporting negligence and proximate cause overlap, they are not the same conceptually and evidence of negligence alone is not enough to establish liability (*Sheehan v City of New York,* 40 NY2d 496, 501; *Dunn v State of New York,* 29 NY2d 313; *Brogan v Zummo,* 92 AD2d 533). The concept of proximate cause incapable of precise definition, stems from policy considerations that serve to place manageable limits upon liability for negligent conduct (*Derdiarian v Felix Contr. Corp.,* 51 NY2d 308, 314; *Ventricelli v Kinney System Rent A Car,* 45 NY2d 950, 952). Proximate cause must " 'be determined on the facts of each case upon mixed considerations of logic, common sense, justice, policy and precedent' " (Prosser, Law of Torts [4th ed], § 42, p 249). Some of the factors to be considered include the relationship between the parties, temporal duration, spatial relation, foreseeability and public policy (see *Pagan v Goldberger,* 51 AD2d 508, 511-512). Although the causation issue is generally left for the trier of fact, it is the court's function to determine if a prima facie case of causation has been established (*Ventricelli v Kinney System Rent A Car,* 45 NY2d 950, *supra*). Since conjecture and speculation cannot substitute for proof of causation (see *Monahan v Weichert,* 82 AD2d 102, 108; *Kinch v Adams,* 46 AD2d 467, 469), on this record it cannot be said that the accident involving a northbound vehicle was rendered any more probable by the existence of the barrier which obstructed the view of southbound traffic. Although the trial court circumvented the causation problem by attributing the accident to the stress suffered by all westbound drivers who entered the intersection, the record is wholly bare of evidence to support the conjecture. The trial court's determination simply rendered the State an insurer of every westbound vehicle which entered the intersection. As to the

obstructive visual effect of the snowbanks, I agree with the Court of Claims that there was insufficient proof that the existence or position of these snowbanks established negligence on the part of the State. While the State must correct dangerous conditions on its highways, there was no showing that it had a reasonable opportunity to do anything more about the snow that had been pushed off the roadway of the parkway (see *Stuart-Bullock v State of New York,* 33 NY2d 418; *Hicks v State of New York,* 4 NY2d 1). In the absence of proof that the State had any reasonable opportunity to remedy the situation in the brief period following the snow storm, there is no basis for finding the State negligent in failing to eliminate the purported obstruction to vision (see *Mandel v City of New York,* 44 NY2d 1004; *Harrington v City of Buffalo,* 121 NY 147; 1 New York Pattern Jury Instructions [2d ed] 2:225A, pp 523-524; cf. *Smart v Wozniak,* 58 AD2d 993). Accordingly, I dissent and vote to reverse and dismiss the claim.