ERNEST MULLER et al., Respondents, v STATE OF NEW YORK et al., Appellants.

Second Department, May 6, 1985

APPEARANCES OF COUNSEL

*Robert Abrams, Attorney-General* (*Michael S. Buskus* and *Peter J. Dooley* of counsel), for appellants.

*Kaiser, Murray, Collier & Murphy* (*William H. Collier, III,* of counsel; *William R. Collins* on the brief), for respondents.

**OPINION OF THE COURT**

LAZER, J. P.

■ Although the primary issue relates to the judicial power to impose tort liability for planning decisions of governmental agencies, also before us is a significant jurisdictional question raised by the New York State Thruway Authority (the Authority). Claimants filed this claim to recover damages from the State of New York and the Authority for personal injuries and loss of consortium arising out of an automobile accident on the Tappan Zee Bridge. The accident occurred when a vehicle traveling in the opposite direction crossed the median area and struck an automobile owned and driven by claimant Ernest Muller. The claim alleges that Mr. Muller would not have been injured but for the negligent failure of defendants to install median barriers on the central portion of the bridge. At the conclusion of the liability portion of the trial, the claim was dismissed as against the State of New York. The Court of Claims found the Authority liable, however, and after a trial on the issue of damages, judgment was awarded in favor of claimant Ernest Muller in the amount of $50,000 and in favor of claimant Patricia Muller in the amount of $500, together with interest. On this appeal, the State of New York and the Authority contest only a question of jurisdiction and the determination of liability, no issue having been raised with respect to the amount of the damages. Before turning to the jurisdictional question, we note that the appeal by the State must be dismissed. Because the claim against the State was dismissed by the Court of Claims, it is not aggrieved by the judgment appealed from and thus is not a permissible appellant (CPLR 5511).

I

Initially, the Authority asserts that the Court of Claims proceeded in the absence of jurisdiction. Claimants filed their

notice of claim with the Court of Claims and served it upon the Attorney-General in a timely fashion. The court forwarded a copy of the notice of claim to the Authority, which received it within 90 days of the accident. Claimants themselves never actually served the notice of claim upon the Authority, however, and that body now argues that the lack of such service deprived the Court of Claims of jurisdiction to adjudicate the claim against it.

Public Authorities Law § 361-b provides that all claims against the Authority shall be asserted in the Court of Claims "in the same manner and to the extent provided by and subject to the provisions of the court of claims act with respect to claims against the state". Pursuant to Court of Claims Act §§ 10 and 11, a claim is asserted by the filing of a notice of claim with the court and the service of such notice upon the Attorney-General. Failure to serve the Attorney-General is excusable, however, with respect to claims arising prior to January 1, 1985, if the court forwards a copy of the notice to the Attorney-General and it is received within the required time period (L 1962, ch 311, § 5, as amended by L 1976, ch 305, § 1, as amended by L 1984, ch 427, §§ 1, 3).

Claimants' response to the jurisdictional argument is well reasoned, and were we writing upon a clean slate we might adopt it. Simply put, claimants contend that in the absence of any statutory requirement of service upon the Thruway Authority and in the face of a statutory scheme which specifically requires service upon the Attorney-General and makes no mention of service upon anyone else, it is a trap for the unwary if the courts mandate service upon the Authority as well. Moreover, although traditional concepts of personal jurisdiction relative to other litigation (*see,* Siegel, NY Prac ch 4) require service upon the entity being sued, it can be argued that those principles are simply not relevant to the procedures for filing a claim in the Court of Claims. It is well settled that a failure to comply with the Court of Claims filing procedures results in the absence of subject matter rather than personal jurisdiction. This is because compliance with these procedures is necessary to invoke the State's waiver of sovereign immunity but it is not intended to provide personal jurisdiction (*see, e.g., Luri v State of New York,* 52 NY2d 849, *affg* 73 AD2d 1006; *Buckles v State of New York,* 221 NY 418; *Gates v State of New York,* 128 NY 221; *see also, Easley v New York State Thruway Auth.,* 1 NY2d 374). Since the failure to properly file a claim does not implicate the concept of personal jurisdiction and no statute mandates service upon the Authority, it might be reasonable to conclude that a claim

against the Authority may be instituted by service upon the Attorney-General and it is not necessary to serve the Authority.

The weight of precedent is to the contrary, however. The Third Department has held that filing of a notice of claim with the Court of Claims and service upon the Attorney-General does not provide the Court of Claims with jurisdiction to hear a claim against the Thruway Authority unless there is service upon the Authority (*Cantor v State of New York,* 43 AD2d 872; *accord, MacFarland-Breakell Bldg. Corp. v New York State Thruway Auth.,* 123 Misc 2d 307). Furthermore, in *McCormick v State of New York* (44 NY2d 774, *affg* 51 AD2d 28 on relevant part of opn at App Div), the Court of Appeals held that filing with the Court of Claims and service upon the Attorney-General did not serve to confer jurisdiction upon that court over a claim against the East Hudson Parkway Authority, which at that time was subject to claims for tort liability in the Court of Claims under a statute containing the same language that presently governs suits against the Thruway Authority (*compare,* Public Authorities Law § 361-b, *with* L 1963, ch 962, § 6, repealed L 1979, ch 370, § 4). Because the relevant sections of the East Hudson Parkway Authority provisions were identical to those in the Thruway Authority statute, the same rules obviously should apply to both. Similarly, the First Department has interpreted another such statute as requiring service upon the City University of New York (*Brinkley v City Univ.,* 92 AD2d 805; *accord, Bicjan v Hunter Coll.,* 116 Misc 2d 978). Therefore, we find ourselves constrained to reject claimants' contention that the mere filing with the Court of Claims and service upon the Attorney-General sufficed to confer jurisdiction upon the Court of Claims.

We conclude, nevertheless, that the Court of Claims did properly assert jurisdiction over the instant claim against the Authority. As an alternative ground for its holding, the Court of Claims determined that it had jurisdiction because its clerk had timely forwarded to the Authority a copy of the notice of claim filed with the court. This ruling was apparently based upon the former provisions of Court of Claims Act § 11, which remain applicable to claims accruing prior to January 1, 1985, and which, in such claims, allow the court to exercise jurisdiction despite a failure to serve the Attorney-General, if the claimant has timely filed a notice of claim with the court, the court has forwarded the notice to the Attorney-General, and the Attorney-General has received the notice within the time required (L 1962, ch 311, § 5, as amended by L 1976, ch 305, § 1, as amended by L 1984, ch 427, §§ 1, 3). Although the former provisions of

Court of Claims Act § 11 refer only to the Attorney-General and not to any other agency that might be the subject of a claim, in the absence of any statute requiring or describing service upon the Authority, the procedures applicable to service upon the Attorney-General should be applied when the claim is against some agency other than the State itself. Since the effect of the judicial gloss we have mentioned is the insertion of a requirement in Court of Claims Act § 11 that service be effected upon the Authority as well as the Attorney-General, the benefits as well as the burdens of that statute should be conferred upon prospective claimants. We hold, then, that jurisdiction over this claim against the Thruway Authority was obtained when the Authority received a copy of the notice of claim from the Clerk of the Court of Claims within the required time period.

## II

With the jurisdiction issue disposed of, we reach the merits of the liability claim. The Authority contends that the judgment against it must be overturned because its failure to install median barriers was based on appropriate studies by the Authority's staff of experts (*see, Weiss v Fote,* 7 NY2d 579). It is with some reluctance that we reach the same conclusion.

The Tappan Zee Bridge, the scene of the accident, runs in an east-west direction across the Hudson River. Both the eastern and western approaches are curved, but the central or tangent section of the bridge forms a straight line. The accident took place on this straight section of the bridge. At the time of the accident in 1977, median barriers had been constructed along both the western and eastern curves, but no barriers had then been installed on the straight section.

The bridge was constructed without any median barriers in the early 1950s and was opened in 1955. No claim is made on this appeal that the initial design and construction without barriers was negligent. Rather, claimants contend that the Authority was negligent in not installing barriers during the intervening years as the state of the art and the prevailing safety standards changed.

The debate over whether barriers should be installed on the bridge began in the early 1960s. Although there is some indication that the Authority had previously considered the matter, the record contains no real evidence of any formal study of median barriers until 1961, when an official of the Automobile Club of New York wrote to the Chairman of the Authority suggesting that such barriers be installed on the bridge. The club and other concerned citizens went on to wage a campaign

over the course of the next two decades in numerous letters to various officials of the Authority urging the installation of such barriers. After receiving the initial letter, the Chairman of the Authority requested reports and recommendations from both its staff and the State Police. The State Police suggested that median barriers be installed along the entire length of the bridge since they had proven effective in reducing accidents on other roads.

The staff, however, following an extensive examination of the record of accidents on the bridge and the use of median barriers in other areas, decided in two reports that such barriers should not be installed on the straight section of the bridge, but that barriers should be erected on the western curve. While agreeing that median barriers would reduce the incidence of cross-median accidents, the staff was of the belief that they would result in an increase in other types of accidents such as sideswipes and multicar accidents among vehicles moving in the same direction when cars which struck the barrier were deflected back into the lanes of traffic. Additionally, the staff found that the installation of barriers would hinder emergency vehicle traffic on the bridge, since such vehicles used the median as a means of access to the bridge when it was congested by traffic. Finally, the staff noted that the construction of median barriers would prevent disabled vehicles from pulling off the roadway onto the median and would accordingly increase the chance of rear-end collisions. On balance, then, the staff concluded that the erection of median barriers on the straight section of the bridge would be both too costly and ineffective.

The staff's position was adopted by the Authority and remained in effect until 1974 despite the fact that in October 1962, the Authority had adopted a policy of installing median barriers on all sections of the Thruway where the central median was less than 20 feet in width unless it was decided that the installation of such barriers at particular locations was inadvisable. The press release announcing this policy stated that such barriers were to be installed along the entire length of the Tappan Zee Bridge. Nevertheless, the fact remains that the determination not to install such barriers on the bridge remained in effect and it appears that the statement to the contrary in the press release was an unexplained error.

During the 10 years following the adoption of this policy, no further formal study of the matter was undertaken by the Authority. Additional studies were undertaken in 1972 and 1973. The first made no recommendations, but listed a number

of possible actions which the Authority could take. The possibilities outlined were: (1) continued refusal to install any barriers on the straight section, (2) construction of removable barriers on one or both sides of the median, (3) construction of immovable barriers on the median, and (4) installation of median barriers on the eastern curve only. The second and more comprehensive study, made by the Thruway bridge engineer, contained several recommendations for improving the safety of the bridge, but ultimately determined that no median barriers should be installed on the straight section for essentially the same reasons as set forth in the earlier reports. This report did suggest construction of median barriers along the eastern section of the bridge. The recommendation concerning median barriers was adopted by the Authority and barriers were erected along the eastern curve.

In response to renewed complaints to the Authority and the Governor, the Authority, in 1974, reviewed the matter once again and at that time decided to install median barriers of some sort along the entire length of the bridge. Due to continuing debate over the type of barriers to be installed and the perceived need to design and concurrently install a traffic control system to ensure access by emergency vehicles, barriers were not actually erected on the straight section of the bridge until some time after claimants' accident in 1977.

Claimants contended, and the Court of Claims held, that the Authority was negligent in not constructing median barriers along the straight section of the bridge prior to the accident. Whatever the wisdom of the Authority and its staff in the years prior to the accident, strong public policy considerations expressed in a binding precedent prevent recovery under the circumstances here reviewed.

In *Weiss v Fote* (7 NY2d 579, 586, *supra*), the Court of Appeals held that liability for injuries arising out of the operation of a duly established highway safety plan may only be predicated on proof that the decision to adopt the plan "was either arbitrary or unreasonable". The court reasoned that "[t]o accept a jury's verdict as to the reasonableness and safety of a plan of governmental services and prefer it over the judgment of the governmental body which originally considered and passed on the matter would be to obstruct normal governmental operations and to place in inexpert hands what the Legislature has seen fit to entrust to experts" (*Weiss v Fote, supra,* at pp 585-586). Thus, the court concluded that in such a case liability "may only be predicated on proof that the plan either was evolved without

adequate study or lacked reasonable basis" (*Weiss v Fote, supra,* at p 589).

With the benefit of hindsight, it is not difficult to perceive certain flaws in the staff determinations that recommended against center-median barriers. For example, they discounted the severity of cross-median accidents compared with other types of accidents and did not give appropriate weight to the change in the accident rate on the western curve following installation of median barriers. Nonetheless, it cannot be said that the studies were completely inadequate or that the staff objections to center-median barriers upon which the Authority based its judgment were inherently unreasonable (*see, Schuls v State of New York,* 92 AD2d 721). It is evident that something more than a conflict among expert opinions must be shown before liability may be imposed in these circumstances (*Weiss v Fote,* 7 NY2d 579, 588, *supra*). While the lapse of time and the accidents that occurred between 1962 and the construction of the median barriers are troubling, due respect must be accorded to the judgment of the Authority based on studies prepared by its professional staff. The policy considerations expressed in *Weiss v Fote* (*supra*) prevent us from substituting our "inexpert" views for those of the Authority and the professionals whose duty it was to pass on issues such as those the Authority faced at the Tappan Zee Bridge. Since ostensibly sound reasons were given for the staff recommendations, it would be error for us to retrospectively declare those determinations arbitrary and unreasonable. Therefore, we cannot say that the Authority did not have a reasonable safety plan.

In the vast majority of cases decided since *Weiss v Fote* (*supra*), appellate courts have refused to impose liability in similar situations (*see, e.g., Schwartz v New York State Thruway Auth.,* 61 NY2d 955 [length of guardrail]; *Schuls v State of New York,* 92 AD2d 721, *supra* [speed limit]; *Puliatti v State of New York,* 91 AD2d 1192 [failure to replace aluminum railings]; *Van Iderstine v Lane Pipe Corp.,* 89 AD2d 459 [guardrails]; *Smith v State of New York,* 75 AD2d 910 [inadequate traffic control devices]). Liability has normally been imposed only when the governmental body failed to study a dangerous situation or failed to act even after internal studies showed that action was appropriate (*see, e.g., Heffler v State of New York,* 96 AD2d 926). In *Alexander v Eldred* (63 NY2d 460), for example, the Court of Appeals sustained liability against the City of Ithaca for its failure to install a stop sign at an admittedly dangerous intersection. The only excuse offered by the city was its erroneous belief that it lacked the authority to install a stop sign on a

private road used by the public. The court held that the *Weiss v Fote* (7 NY2d 579, *supra*) doctrine was inapplicable in *Alexander* because the city's decision was not founded on a reasonable traffic safety plan, but rather on an egregious and completely unjustified error of law. The present situation is quite different, for the Authority's actions were based upon a safety plan drawn by its experts, and it would be error for us to hold that the way they balanced the consequences of median barriers against the consequences of no such barriers subjected the Authority to liability.

It is true, of course, that a public body responsible for public safety planning is under a continuing duty to review and revise public safety plans in light of the actual operation of the plans and *any* significant changes in circumstances (*see, Heffler v State of New York,* 96 AD2d 926, *supra; Atkinson v County of Oneida,* 89 AD2d 826, *revd on other grounds* 59 NY2d 840; *see also, Gutelle v City of New York,* 55 NY2d 794). Here, the record indicates that no formal studies of the need to install median barriers on the straight section of the bridge were undertaken by the Authority during the 10-year period from 1962 to 1972. Thus, it could also be argued that this failure to review the existing safety plan was a breach of the Authority's duty which would allow recovery by claimants. The force of this position is vitiated, however, by the fact that once formal studies of the matter were again initiated in 1972 and 1973, the conclusion was again reached by the Authority's experts that median dividers should not be installed on the straight section of the bridge (*see, Schuls v State of New York,* 92 AD2d 721, *supra*). Considering the severe limitations that the public policy considerations enunciated in *Weiss v Fote* (7 NY2d 579, *supra*) place upon the right of the judicial branch to impose liability for the planning decisions of other governmental agencies, the barrier to recovery by the claimants is insuperable. For us to declare that the staff studies and the conclusions drawn from them were not a reasonable safety plan would constitute the type of judgment substitution that *Weiss v Fote (supra)* prohibits.

As to the time that elapsed before installation of the barriers once the decision to do so was made in 1974, the delay was caused in large part by the perceived need to install a traffic control system on the bridge concurrently with the median barriers. Such a system was deemed necessary to allow passage of emergency vehicles and to maintain proper traffic control once the use of the median for emergency purposes would be curtailed by the median barriers. Not only did the design and selection of this system take considerable time, but there was a

continuing debate within the staff as to the appropriate type of median barriers to be installed, so further study of this issue was also undertaken prior to installation. While the delay was unfortunate in the extreme, in a governmental agency beset by the necessity to decide issues such as these and to plan and undertake a multiplicity of projects, we cannot say that the delay was unreasonable to the extent of creating a tort liability for it.

Accordingly, on the appeal by the New York State Thruway Authority, the judgment should be reversed, on the law, without costs or disbursements, and the claim should be dismissed in its entirety. The appeal by the State of New York from the judgment in question should be dismissed, without costs or disbursements, since it is not aggrieved thereby (CPLR 5511).

THOMPSON, WEINSTEIN and EIBER, JJ., concur.

Appeal by the defendant State of New York dismissed, without costs or disbursements, upon the ground that it is not aggrieved by the judgment appealed from.

On appeal by the defendant New York State Thruway Authority, judgment reversed, on the law, without costs or disbursements, and claim dismissed in its entirety.