■ JACK GISKE, as Administrator of the Estate of NEIL GISKE, Deceased, Respondent-Appellant, v STATE OF NEW YORK, Appellant-Respondent. (Claim No. 71306.) [595 NYS2d 559] —In a claim to recover damages for wrongful death arising from a motor vehicle accident, (1) the defendant State of New York appeals from so much of an interlocutory judgment of the Court of Claims (Blinder, J.), dated June 28, 1990, as, after a nonjury trial, apportioned 50% of the fault in the happening

of the accident to the State, and (2) the claimant cross-appeals from so much of the same interlocutory judgment as found the decedent 50% at fault in the happening of the accident.

Ordered that the interlocutory judgment is affirmed, without costs or disbursements.

During the early morning hours of March 24, 1985, the decedent was driving eastward on the Long Island Expressway when his vehicle left the roadway and crashed into a brick abutment supporting a pedestrian overpass at 173rd Street in Fresh Meadows, Queens. Although there were no eyewitnesses to the accident, several expert witnesses testified that after the car left the roadway, it mounted a concrete barrier which ran alongside the roadway, and traversed the entire length of the barrier before smashing into the abutment. While none of the expert witnesses could determine why the decedent's vehicle initially left the roadway, there is no indication that the decedent was driving under the influence of alcohol or narcotics, and his vehicle, which had only 6,552 miles registered on its odometer, showed no significant tire tread wear.

The testimony presented at trial established that the State had been aware, at least since 1982, that similar accidents had occurred at the site of the decedent's accident. The New York State Department of Transportation (hereinafter the DOT) responded by commissioning a study, which recommended the installation of a guide rail at the point where vehicles had previously mounted the concrete barrier. However, the director of the DOT's regional office in New York City testified that the State declined to finance the installation of a guide rail because it did not have an existing capitol project for the subject location. Although the State presented no evidence concerning the factors which figured into its funding assessment, the director estimated that installation of the guide rail would have cost approximately $5,000 and would have taken a "day or so" to complete.

On appeal, the State contends that it is insulated from liability in the instant case by the rule that a governmental body may not be held liable for injuries arising from decisions regarding the implementation of a reasonable highway safety plan *(see, Weiss v Fote, 7 NY2d 579; see also, Alexander v Eldred, 63 NY2d 460)*. We disagree. Although the State is accorded a qualified immunity from liability arising out of highway planning decisions, the doctrine of qualified immunity does not shield the State from liability where, as here, it has failed to demonstrate that the initial installation of the

barrier or the failure to implement the recommendation contained in its own study was the product of a reasonable safety plan *(see, Matter of Friedman v State of New York,* 111 AD2d 921, 922-923, *affd* 67 NY2d 271). Moreover, when the State is made aware of a dangerous highway condition and fails to take action to remedy it, the State can be held liable for resulting injuries *(see, Gomez v New York State Thruway Auth.,* 73 NY2d 724, 725; *Friedman v State of New York,* 67 NY2d 271, *supra; Lattanzi v State of New York,* 74 AD2d 378, *affd* 53 NY2d 1045). At bar, the State failed to demonstrate that the three-year delay between its recognition of the hazardous condition posed by the concrete barrier and the decedent's accident was necessary in order to formulate a reasonable safety plan, or that the delay stemmed from a legitimate ordering of priorities with other projects based on the availability of funding. Thus, regardless of whether the barrier, as originally designed and constructed, met appropriate engineering standards or was the product of a reasonable plan with an adequate basis, the trial court properly apportioned a share of liability to the State *(see, Gomez v New York State Thruway Auth., supra,* at 724-725; *Friedman v State of New York, supra,* at 287; *Gutelle v City of New York,* 55 NY2d 794; *Carroll v State of New York,* 157 AD2d 697, 698; *Marren v State of New York,* 142 AD2d 717, 720).

Upon exercising our broad power of review of this nonjury determination *(see, Marren v State of New York, supra; Superb Health Foods Corp. v Marino,* 138 AD2d 366, 368; 7 Weinstein-Korn-Miller, NY Civ Prac ¶ 5501.20), we find that the trial court's apportionment of 50% of the fault to the State and 50% to the decedent was supported by the credible evidence adduced at the trial *(see, Bottalico v State of New York,* 87 AD2d 807, *affd* 59 NY2d 302). Bracken, J. P., Eiber, Ritter and Santucci, JJ., concur.