*Supreme Court, Appellate Division*
*Third Judicial Department*

Decided and Entered:  March 5, 2015                    518859
_____

BARBARA GRAFF, as Executor of
    the Estate of GARY MYERS,
    Deceased,
                    Appellant,

        v                                    MEMORANDUM AND ORDER

STATE OF NEW YORK,
                    Respondent.
_____

Calendar Date:  January 6, 2015

Before:  Garry, J.P., Egan Jr., Lynch and Clark, JJ.

                    _____


        Graff Law, LLC, Kingston (Sharon A. Graff of counsel), for
appellant.

        Eric T. Schneiderman, Attorney General, Albany (Jeffrey W.
Lang of counsel), for respondent.

                    _____


Egan Jr., J.

        Appeal from a judgment of the Court of Claims (Hard, J.),
entered July 9, 2013, upon a decision of the court in favor of
defendant.

        The underlying claim arises out of a motor vehicle accident
that occurred at the intersection of DeWitt Mills Road and State
Route 32 in the Town of Rosendale, Ulster County on April 13,
2006.  Immediately prior to the accident, claimant's husband

(hereinafter decedent)[1] was operating his 1999 Honda 1100 motorcycle eastbound on DeWitt Mills Road with claimant as his passenger.  As decedent approached the intersection with State Route 32, decedent came to a stop before the stop sign, put his feet down and looked in both directions in preparation for making a left-hand turn onto State Route 32 northbound.  Claimant was familiar with this intersection and was aware that, due to a rock outcropping near the northwest corner of the intersection, his view of southbound traffic on State Route 32, which had a posted speed limit of 55 miles per hour, was limited.  To improve his vantage point, decedent slowly inched forward – with his feet still down – and again came to a complete stop.  At this point, decedent was past the stop line on DeWitt Mills Road and was in close proximity to the travel portion of State Route 32.[2] Decedent then looked to his right, looked across the road, looked to his left, looked to his right again and then looked back to his left again before proceeding into the intersection.  Shortly thereafter, while roughly in the middle of the southbound lane of State Route 32, decedent's motorcycle was struck by an automobile operated by Kevin Mayes.  As a result of this collision, decedent sustained numerous injuries, including a broken hip, a fractured femur and a crushed left foot – the latter of which required amputation.  Decedent also was ticketed for failing to yield the right-of-way.[3]

The record reflects that defendant, through its Department of Transportation (hereinafter DOT), undertook a traffic investigation of the subject intersection in 1990 and, as early as 1991, appears to have acknowledged in a letter to the Town of

---

[1]  Decedent subsequently died from causes unrelated to the accident, and his wife was substituted as claimant herein.

[2]  Decedent variously testified that – the last time he came to a stop – his front tire was "almost on" the travel portion of State Route 32 or was approximately four or five feet short thereof.

[3]  According to decedent, this ticket subsequently was dismissed.

Rosendale Town Supervisor[4] that "an existing rock embankment in the northwest quadrant of the intersection . . . limit[s] sight distances for motorists egressing DeWitt Mills Road and looking north on [State] Route 32."[5]   Although DOT concluded in 1994 that a speed reduction for this portion of State Route 32 was not warranted, a warning sign advising of the approaching intersection and suggesting an advisory speed of 35 miles per hour for southbound motorists thereafter was installed and, in or about 1995, flashing beacons were added thereto.  Concerns regarding the intersection apparently persisted and, in March 2000, one of DOT's engineers again "recognize[d] the need to improve motorists['] sight distance to the north of the intersection . . .[, which could] be addressed by cutting back the existing rock embankment located in the northwest quadrant of the intersection."  Removal of the outcropping — budgeted at a cost of $350,000 — was included in the capital construction program for fiscal year 2006-2007, but remedial efforts had not been undertaken as of the time of decedent's accident.

Decedent thereafter commenced this negligence action against defendant seeking to recover for injuries sustained in the accident.  Decedent apparently was quite ill at the time of trial, as a result of which his examination before trial testimony and a portion of his testimony given at a hearing held pursuant to General Municipal Law § 50-h were received into evidence.  The Court of Claims thereafter rendered a decision in favor of defendant, finding that claimant failed to prove that defendant's remedial efforts were unreasonable or inadequate and, in any event, that any negligence on the part of defendant in failing to remove the rock outcropping was not the proximate

---

[4]   The copy of this document reproduced in the record on appeal omits both the letterhead and the identity of the signatory, but it contains the same DOT case and file numbers as appear in other letters authored by DOT representatives.

[5]   Claimant's expert subsequently would testify that the minimum safe sight distance for this intersection was 620 feet, but that, due to the rock outcropping, the available sight distance was only 365 feet.

cause of the accident.  This appeal by claimant ensued.

We affirm.  "[I]n the field of traffic design engineering, [defendant] is accorded a qualified immunity from liability arising out of a highway planning decision. . . .  Under this doctrine of qualified immunity, a governmental body may be held liable when its study of a traffic condition is plainly inadequate or there is no reasonable basis for its traffic plan. Once [defendant] is made aware of a dangerous traffic condition it must undertake reasonable study thereof with an eye toward alleviating the danger" (Friedman v State of New York, 67 NY2d 271, 283-284 [1986] [citations omitted]; see Racalbuto v Redmond, 46 AD3d 1051, 1052 [2007]; Winney v County of Saratoga, 8 AD3d 944, 945 [2004]).  If defendant's response to an identified hazard is unreasonably delayed, defendant must demonstrate either that the delay "was necessary in order to study and formulate a reasonable safety plan, that the delay was itself part of a considered plan of action taken on the advice of experts, or that the delay stemmed from a legitimate ordering of priorities with other projects based on the availability of funding" (Friedman v State of New York, 67 NY2d at 287; see Giske v State of New York, 191 AD2d 675, 676-677 [1993]).

Although the parties continue to debate whether, consistent with the foregoing principles, defendant's response to the acknowledged hazard was adequate and, further, whether the documented delay in cutting back the offending outcropping was unreasonable, these issues need not detain us.  Assuming, without deciding, that defendant's efforts in this regard indeed were inadequate and/or unreasonably delayed, thereby establishing that defendant was negligent, claimant failed to demonstrate that such negligence was the proximate cause of decedent's accident.  In this regard, we note that the Court of Claims expressly credited the testimony offered by Mayes as to, among other things, the speed at which he was traveling as he approached the intersection in question, and the court's credibility determination is entitled to some measure of deference (see Shon v State of New York, 75 AD3d 1035, 1036 [2010]).  That said, even if we were to discount Mayes' testimony on this point — wherein he stated that he was traveling between 40 and 45 miles per hour as he proceeded southbound on State Route 32 and was periodically braking as he

approached the intersection — and, further, assumed that Mayes was traveling at the posted speed limit of 55 miles per hour at the time of the collision,[6] claimant's proof at trial still fell short.

As noted previously, claimant's expert testified that the minimum safe sight distance for this intersection was 620 feet; due to the rock outcropping, the available sight distance was only 365 feet. Claimant's expert also testified that a vehicle proceeding at 55 miles per hour travels approximately 80 feet per second, that the front wheel of decedent's motorcycle "was just about on the double yellow line" of State Route 32 when he was struck by Mayes' vehicle and that it took decedent approximately three seconds to accelerate onto State Route 32 and reach the point of impact from his stopped position on DeWitt Mills Road. Although decedent testified that he did not see Mayes' vehicle prior to entering the intersection, decedent also testified that he last looked to his left, i.e., northbound on State Route 32, prior to pulling out into the intersection. If — as claimant's expert testified — the collision occurred three seconds after decedent began to accelerate, then Mayes would have been approximately 240 feet north of the intersection when decedent pulled out onto State Route 32 (80 feet per second x 3 seconds = 240 feet), thereby placing Mayes' vehicle well within the 365 feet of available sight distance.[7] Hence, regardless of whether the rock outcropping precluded decedent from seeing Mayes' vehicle as it began its initial descent toward the intersection, the record nonetheless establishes that Mayes' vehicle was well within the available sight distance during the three seconds that

---

[6] Mayes was not ticketed as the result of this accident, and nothing in the record suggests that he was speeding prior to colliding with decedent.

[7] If, as the Court of Claims found, Mayes was traveling only 45 miles per hour as he approached DeWitt Mills Road, this would place Mayes within approximately 198 feet (66 feet per second x 3 seconds = 198 feet) of the intersection at the point in time when decedent accelerated and pulled out onto State Route 32 — again, well within the available sight distance.

it took decedent to accelerate into the intersection.  At oral argument, counsel for claimant noted that this three-second interval only addresses the period of time that it took decedent to accelerate into the intersection and does not factor in whatever additional time may have elapsed between the point in time that decedent last looked to his left and the moment that his motorcycle began to move forward; such additional interval, counsel asserted, arguably places Mayes' vehicle outside of the available sight distance.  The flaw in this analysis is that decedent did not testify as to how many seconds actually elapsed between the time that he last looked to his left and the moment that he began to accelerate, nor did claimant's expert opine as to how much time — on average — would elapse under these circumstances, and it is not the function of this Court to speculate as to this interval.  Accordingly, based upon the testimony adduced at trial, the credibility determination made by the Court of Claims and the fact that decedent was obligated to see that which was there to be seen (see Appollonia v Bonse, 92 AD3d 1170, 1171 [2012]; Ranaudo v Key, 83 AD3d 1315, 1316 [2011]), we cannot say that the Court of Claims erred in finding in favor of defendant.

Garry, J.P., Lynch and Clark, JJ., concur.


ORDERED that the judgment is affirmed, without costs.




ENTER:


Robert D. Mayberger
Clerk of the Court