*Supreme Court, Appellate Division*
*Third Judicial Department*

Decided and Entered:  July 23, 2015                    520198
_____

MATTHEW EVANS,
                    Appellant,

            v                              MEMORANDUM AND ORDER

STATE OF NEW YORK,
                    Respondent.
_____


Calendar Date:  June 5, 2015

Before:  McCarthy, J.P., Egan Jr., Lynch and Devine, JJ.

                    _____


        Tuttle Law Firm, Latham (James B. Tuttle of counsel), for
appellant.

        Eric T. Schneiderman, Attorney General, Albany (Kathleen M.
Arnold of counsel), for respondent.

                    _____


Lynch, J.

        Appeal from a judgment of the Court of Claims (Hard, J.),
entered February 28, 2014, upon a decision of the court following
a bifurcated trial in favor of defendant on the issue of
liability.

        Claimant, who was a Warren County Deputy Sheriff, was
injured on May 16, 2009 while responding to a call at
approximately 3:00 a.m. on State Route 8 in the Town of Horicon,
Warren County.  It is not disputed that it had been raining
steadily throughout the evening.  Claimant alleged that the
roadway washed out, creating a sinkhole that caused his car to
bottom out, launch into the air and land with such force that he
injured his back.  Following a nonjury trial on the issue of
liability, the Court of Claims made certain factual findings and

dismissed the claim, finding that defendant was entitled to qualified immunity. Judgment was entered upon the court's decision and claimant now appeals.

Municipalities unquestionably have a duty to maintain roads in a reasonably safe condition (see Friedman v State of New York, 67 NY2d 271, 283 [1986]). With respect to highway safety and design, however, defendant is "accorded a qualified immunity from liability arising out of a highway planning decision" (id. at 283; see Graff v State of New York, 126 AD3d 1081, 1083 [2015]; Winney v County of Saratoga, 8 AD3d 944, 945 [2004]). Here, the gravamen of the claim is that the 9-foot-high, 15-foot-wide oval culvert that carried the Spuytenduiveil Creek underneath Route 8 was too small and should have been replaced. Plaintiff maintains that this condition presented a maintenance and repair issue that defendant was required to address in its proprietary capacity for which basic negligence and not sovereign immunity principles apply (see Wittorf v City of New York, 23 NY3d 473, 479 [2014]). We disagree.

Generally, when reviewing nonjury verdicts by the Court of Claims, we have "broad authority to independently review the probative weight of the evidence," but we should defer to the court's credibility determinations and factual findings (Ball v State of New York, 106 AD3d 1248, 1249 [2013] [internal quotation marks and citations omitted]). Here, the evidence at trial established that the culvert was installed in approximately 1969 in accordance with the design standard that required culverts to be built to withstand a "50 year storm," meaning the worst storm on record in the past 50 years. Defendant's engineers inspected the culvert periodically, beginning in at least 1994 in accordance with an established culvert inspection program. After these inspections, the culvert was assigned satisfactory ratings until 2008, when defendant's engineers determined to assign it the lowest possible rating that a functioning culvert could receive.

It is not disputed that, despite the satisfactory ratings, the road around the culvert on Route 8 washed out at least four times before 2006. Testimony by defendant's engineers confirmed that each time the road and fill washed away, the culvert

remained structurally intact. When the road washed out in 2004, defendant's engineers went to the scene and determined to repair the road, but not to replace or redesign the culvert. The completed repairs were significant and involved not only rebuilding and repaving the road, but also fortifying the embankments around the culvert. Similarly, after the 2006 washout, a Department of Transportation (hereinafter DOT) engineer requested an emergency road repair contract and, at the same time, also recommended that the culvert, which was described as undersized, be placed on the "program for replacement." Testimony by the DOT engineer confirmed that the culvert was, in fact, placed on the list in accordance with this recommendation. DOT's regional director, Thomas Werner, testified that the replacement of the culvert would require a "new analysis" incorporating current design standards and qualified as a capital project addressed in a separate capital program. He explained that the capital program replacement list was a compilation of "all of the [highway] needs in the region" that "would be looked at in terms of . . . all of the bridge needs, highway needs, [and] the available money . . . [to determine] whether or not [something] should . . . be replaced." He further explained that the list was discussed monthly with a committee of engineers, and requests were prioritized against the available budget. While he could not recall specifics with regard to the culvert, he recalled that there were hundreds of culverts in the region, and that there were "dozens, if not hundreds[,] of these situations going on all the time in the region" with "dozens of requests going on at any particular time." He recalled that, in general, once a repair request was granted, it would be scheduled for completion within five to seven years. Werner confirmed that the Route 8 culvert was replaced in 2010.

In order to successfully invoke the qualified immunity defense, defendant had the burden of demonstrating that its decision with regard to the replacement of the culvert "'was the product of a deliberative decision-making process'" (Matter of Estate of Hamzavi v State of New York, 43 AD3d 1430, 1431 [2007], quoting Appelbaum v County of Sullivan, 222 AD2d 987, 989 [1995]). Even with design planning issues, liability may exist where the municipality does not adequately analyze the condition or if there is no reasonable basis for its plan (see Friedman v

State of New York, 67 NY2d at 284; Winney v County of Saratoga, 8 AD3d at 945). If a remedial plan is developed, "liability may result from a failure to effectuate the plan within a reasonable period of time," but "a reasonable delay justified by design considerations [or] a legitimate claim of funding priorities would not be actionable" (Friedman v State of New York, 67 NY2d at 286-287; see Graff v State of New York, 126 AD3d at 1083).

Based upon our review of the probative evidence, we agree with the Court of Claims that the replacement of the culvert presented a design and not a maintenance issue and that defendant was entitled to qualified immunity. While Werner could not specifically recall defendant's plan for the Route 8 culvert, the evidence was clear that, when faced with road damage, defendant's engineers determined that the appropriate plan was to first repair and reopen the road. In 2006, the plan to replace the culvert was included on the list of capital projects for consideration. In addressing this response, we may neither substitute our judgment for that exercised by defendant's expert engineers, nor can we view their determinations with the benefit of hindsight (see Friedman v State of New York, 67 NY2d at 286). In our view, the evidence supports the Court of Claims' assessment that the timing of the replacement was due to legitimate funding priorities and, thus, the delay in ultimately replacing the culvert was not unreasonable. Accordingly, we find that, because defendant's plan was deliberative and adequate, the Court of Claims properly dismissed the claim based on defendant's qualified immunity (see Smythe v Woods, 41 AD3d 1130, 1131-1132 [2007]).

McCarthy, J.P., Egan Jr. and Devine, JJ., concur.

ORDERED that the judgment is affirmed, without costs.

ENTER:

Robert D. Mayberger
Clerk of the Court