Driscoll v State of New York (2018 NY Slip Op 02694)





Driscoll v State of New York


2018 NY Slip Op 02694


Decided on April 19, 2018


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: April 19, 2018

525150

[*1]MARISSA DRISCOLL et al., Appellants,
v
STATE OF NEW YORK, Respondent.

Calendar Date: February 23, 2018

Before: Garry, P.J., Egan Jr., Lynch, Rumsey and Pritzker, JJ.


Conway & Kirby, PLLC, Delmar (Dana M. Boniewski of counsel), for appellants.
Eric T. Schneiderman, Attorney General, Albany (Joseph M. Spadola of counsel), for respondent.


Lynch, J.

MEMORANDUM AND ORDER
Appeal from a judgment of the Court of Claims (Collins, J.), entered September 22, 2016, upon a decision of the court in favor of defendant.
This negligence claim arises out of a motor vehicle accident that occurred on a clear dry day in September 2012 along State Route 9 at the intersection with Lansing Lane in the Town of Halfmoon, Saratoga County. Claimant Marissa Driscoll was a passenger in a vehicle being driven by Kenneth Desautels. The accident occurred as Desautels attempted to turn left from Lansing Lane to proceed southbound on Route 9, when his vehicle was struck by a vehicle proceeding northbound on Route 9. Driscoll, and her mother, derivatively, commenced this action to
recover damages for injuries sustained in the accident, contending that defendant was negligent in maintaining a dangerous intersection that limited the sight distance for drivers attempting to exit from Lansing Lane onto Route 9. Following a trial on liability only, the Court of Claims dismissed the claim, finding that defendant was not negligent, that defendant's actions were not a proximate cause of the accident and that defendant was entitled to qualified immunity. Claimant appeals.
We affirm. Defendant has an acknowledged duty to maintain roads in a reasonably safe condition. For highway safety and design decisions, defendant "is accorded a qualified immunity from liability arising out of a highway planning decision" (Friedman v State of New York, 67 NY2d 271, 283 [1986]). Under this doctrine, defendant "may be held liable when its study of a [*2]traffic condition is plainly inadequate or there is no reasonable basis for its traffic plan" (id. at 284).
Lansing Lane is a two-lane town road proceeding in an east-west direction that ends at the east side of Route 9, a four-lane highway with a center turn lane and a speed limit of 55 miles per hour (hereinafter mph). The focus at trial is whether Desautels, who came to a stop on Lansing Lane, was able to safely see oncoming traffic before attempting to turn left onto Route 9. As the Court of Claims observed, Desautels' testimony was at times vague and inconsistent, but after being confronted with his deposition testimony, he acknowledged stopping three times on Lansing Lane — first at a stop sign about 20 feet from the edge of Route 9, then at a stop line about 12 feet from the edge, and then beyond the stop line "a little more." At this final juncture, looking south, Desautels confirmed that he "was able to see the whole road, except going downhill." From that vantage point, the record shows that Route 9 slopes downhill. At the south corner of Lansing Lane there is a grassy hill. According to the responding State Trooper, the collision occurred in the right northbound lane of Route 9, with the other vehicle impacting the driver's side door of Desautels' vehicle. For his part, Desautels confirmed that he did not see the other vehicle until it was only about "an inch away."
Claimants' expert, professional engineer John Serth, testified that the limited sight distance at Lansing Lane was unsafe for a driver attempting to turn south onto Route 9. Serth identified the grassy hill as an obstruction, which, as demonstrated by photographs in evidence, would be accurate from a vantage point at the stop sign. But here, Desautels confirmed that he moved closer to Route 9, ultimately stopping beyond the stop line. From that vantage point, Desautels made no claim that the grassy hill impeded his view and, moreover, the record photographs belie such a claim (see Prasarn v State of New York, 156 AD3d 1027, 1028 [2017]).
The defining question remains whether Desautels could safely observe oncoming traffic. Relying on standards established in 1954 by the American Association of State Highway and Transportation Officials (hereinafter AASHTO), Serth measured the intersection sight distance at "somewhere between 350 and 400 feet." He did so from a point 20 feet from the edge line of Route 9, at a height of 44 inches, to approximate the location of a driver's eye looking south. Serth further calculated the safe stopping distance of a vehicle proceeding at 55 mph on Route 9 at 650 feet. "Stopping sight distance is the distance a motorist needs at a defined speed to perceive an expected danger and bring the vehicle to a stop" (id. at 1028). Serth explained that for a stopped vehicle on Lansing Lane to cross over Route 9 into the southbound lane would take eight seconds. Factoring in the speed of northbound traffic, Serth concluded that an intersection sight distance of 650 feet was required. Taken together, Serth concluded that these measurements established that the intersection sight distance at Lansing Lane was inadequate and unsafe. He further testified that defendant was negligent in failing to take appropriate corrective measures when, in response to accident complaints, defendant's Department of Transportation (hereinafter DOT) performed studies at the intersection in 1996 and in 2009.
Both DOT witnesses — Nancy Connolly, a civil engineer, and her supervisor, Reed Sholtes, a professional engineer — confirmed that site studies were performed in 1996 and 2009. For 2009, Connolly prepared an accident history and also measured the intersection sight distance at 1,100 feet, a finding consistent with the 1996 study measuring intersection sight distance at 1,140 feet. She did so utilizing a radar gun to discern approaching traffic from a point 12 feet from the edge of Route 9. As to the standard governing the measurement of intersection sight distance, Sholtes testified that DOT used its own Manual of Uniform Traffic Control Devices (hereinafter MUTCD) up until 2007, when defendant adopted the 2003 federal MUTCD together with a New York supplement. Sholtes explained that DOT did not use AASHTO [*3]standards to measure intersection sight distance because the MUTCD applied to existing conditions, while AASHTO provided design standards for new or reconstructed roads. Further, because neither the 2003 federal MUTCD nor the supplement provided the standard for measuring intersection sight distance, DOT referred back to its 2003 MUTCD to perform the measurement from a point 42 inches above the pavement, 12 feet back from the edge line.
Defendant also presented the testimony of William Logan, a professional engineer and DOT's former regional traffic engineer. Logan agreed with Sholtes that the MUTCD should be used to measure intersection sight distance for existing highways. Like Sholtes, Logan explained that AASHTO standards apply to new or reconstructed highways. While Serth testified that the AASHTO standards apply because Route 9 was reconstructed in 1959, Logan opined that Route 9 at Lansing Lane was not included in the 1959 reconstruction project. In any event, even if one were to use the AASHTO standards, Logan testified the more recent 2004 AASHTO standards should be used, not the 1954 version utilized by Serth. Applying the 2004 AASHTO standards and measuring from a point 42 inches high, 14½ feet back from the edge of Route 9, Logan measured the intersection sight distance at 812 feet. He further estimated that the stopping sight distance for a vehicle traveling 55 mph on Route 9 would be 550 feet. Taken together, Logan determined that the intersection sight distance was adequate and attributed the accident to driver error. Notably, both Sholtes and Logan explained that a driver is required to stop at each traffic control device, i.e., the stop sign and then the stop line, but is not prohibited from then moving toward the edge line to obtain a better view.
In reviewing a nonjury verdict on appeal, we have "broad authority to independently review the probative weight of the evidence," while according "appropriate deference to the court's credibility determinations and factual findings" (Ball v State of New York, 106 AD3d 1248, 1249 [2013] [internal quotation marks and citations omitted]). Doing so, we find no basis to disturb the Court of Claims' determination crediting the testimony of defendant's witnesses. While claimants contend that defendant applied the wrong standard or no standard at all, there is clearly a dispute between the experts as to which standard applies in gauging intersection sight distance. Defendant's witnesses consistently testified that the MUTCD standards applied, which yielded a sight distance of 1,100 feet, and the court was entitled to credit that engineering judgment (see Friedman v State of New York, 67 NY2d at 286; Evans v State of New York, 130 AD3d 1352, 1355 [2015], lv denied 26 NY3d 910 [2015]). Even utilizing the more recent AASHTO standards, Logan computed an intersection sight distance at 812 feet, well beyond Serth's calculation of a safe stopping distance of 650 feet for approaching vehicles. Claimants' contention that defendant confused safe stopping distance with intersection sight distance is refuted by the testimony of each of defendant's witnesses. Moreover, while Sholtes and Logan conceded that there was a pattern of similar right angle accidents at the intersection, that pattern of some seven accidents over a seven-year period was not deemed significant from their perspective, an assessment the court could reasonably accept. The fact that defendant opted to install a warning sign on Route 9 in 2009 to alert approaching drivers of the Lansing Lane intersection ahead as an added precaution does not conflict with defendant's determination that the intersection sight distance at Lansing Lane was adequate. Consequently, we find reasoned support for the court's determination that defendant was not negligent, that its review of traffic conditions at the intersection was reasonable for which defendant is entitled to a qualified immunity, and that defendant's actions were not a proximate cause of this accident.
Garry, P.J., Egan Jr., Rumsey and Pritzker, JJ., concur.
ORDERED that the judgment is affirmed, without costs.