Hunt v State of New York (2025 NY Slip Op 02251)

Hunt v State of New York

2025 NY Slip Op 02251

Decided on April 17, 2025

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:April 17, 2025

CV-24-0064
[*1]Dale H. Hunt et al., Respondents,
v
State of New York, Appellant.

Calendar Date:February 11, 2025

Before:Garry, P.J., Aarons, Reynolds Fitzgerald, McShan and Mackey, JJ.

Letitia James, Attorney General, Albany (Jonathan D. Hitsous of counsel), for appellant.
Harding Mazzotti, LLP, Albany (Peter P. Balouskas of counsel), for respondents.

Garry, P.J.
Appeal from a judgment of the Court of Claims (Frank Milano, J.), entered November 17, 2023, upon a decision of the court in favor of claimants.
On August 13, 2017, claimants were injured when their trike motorcycle was struck by an SUV, operated by Lynn Ohlsten, in an intersection in the Town of Bellmont, Franklin County. Ohlsten later pleaded guilty to failure to yield the right-of-way. Claimants commenced this negligence action against defendant, alleging, among other things, that it knew or should have known about certain visual obstructions at the intersection and failed to adequately respond to the dangerous condition thus created. Defendant answered, asserting that Ohlsten's negligence was the sole legal cause of claimant's accident or, alternatively, that its liability was limited by same. Following a bifurcated nonjury trial on the issue of liability, the Court of Claims found defendant 75% liable for the accident and Ohlsten 25% liable. Following a separate trial on the issue of damages, the court entered a final judgment in favor of claimants. Defendant appeals.
In reviewing a judgment rendered after a civil nonjury trial, this Court has "virtually plenary power to render the judgment it finds warranted by the facts" (Baba-Ali v State of New York, 19 NY3d 627, 640 [2012] [internal quotation marks and citation omitted]), "though we take into account the trial court's advantage of having observed the witnesses" (Bradley-Chernis v Zalocki, 221 AD3d 1095, 1096 [3d Dept 2023] [internal quotation marks and citation omitted]; see Town of Nassau v Nalley, 227 AD3d 1138, 1139 [3d Dept 2024]; Maisto v State of New York, 196 AD3d 104, 114 [3d Dept 2021]; see also Court of Claims Act § 24). The only dispute on this appeal concerns proximate cause. In defendant's view, regardless of whether it breached its duty to maintain the intersection in a reasonably safe condition (see generally Friedman v State of New York, 67 NY2d 271, 286 [1986]), Ohlsten's negligence in failing to yield the right-of-way to claimants was the sole, or at least primary, proximate cause of the accident.
A defendant's negligence will be found to be a proximate cause of the harm at issue where it is "a substantial cause of the events which produced the injury" (Derdiarian v Felix Contr. Corp., 51 NY2d 308, 315 [1980]; see Brown v State of New York, 31 NY3d 514, 519 [2018]). It is well established that "[t]here may be more than one proximate cause of an injury," and, "where the acts of a third person intervene between the defendant's conduct and the [claimant's] injury, the causal connection is not automatically severed" (Turturro v City of New York, 28 NY3d 469, 483, 484 [2016] [internal quotation marks, brackets and citations omitted]; see Hain v Jamison, 28 NY3d 524, 529 [2016]). "Instead, just as with general determinations of proximate cause, when the issue of proximate cause involves an intervening act, 'liability turns upon whether the intervening act is a normal or foreseeable [*2]consequence of the situation created by the defendant's negligence' " (Scurry v New York City Hous. Auth., 39 NY3d 443, 455 [2023] [emphasis omitted], quoting Hain v Jamison, 28 NY3d at 529). "Only where the intervening act is extraordinary under the circumstances, not foreseeable in the normal course of events, or independent of or far removed from the defendant's conduct, may it possibly break the causal nexus" (Mazella v Beals, 27 NY3d 694, 706 [2016] [internal quotation marks, brackets and citation omitted]; see Maheshwari v City of New York, 2 NY3d 288, 295 [2004]).
We begin with those facts that are by now largely undisputed. The subject accident occurred at the intersection of State Route 374, primarily a north-south road, and County Route 24, primarily an east-west road. Both routes are two-lane roads, and the speed limit on each was 35 miles per hour. At the intersection, motorists traveling on Route 374 were governed by a flashing yellow traffic signal, and those traveling on Route 24 were met with a stop line on the pavement, a roadside stop sign, and an overhead flashing red traffic signal with another stop sign mounted above it. There were significant visual obstructions at the northwest corner of the intersection, including a large building, its attached deck and a utility pole; these obstructions resulted in limited sight distance of southbound traffic on Route 374 for vehicles traveling eastbound on Route 24. The limited sight distance for eastbound vehicles was further compounded by the geometry of the intersection, with a sharp curve immediately to the north.
Defendant was aware of these sight distance issues for years prior to the subject accident, as established by the testimony of several witnesses from the Department of Transportation (hereinafter DOT) and their business records, among other evidence. The evidence also included proof of a number of prior accidents at the intersection similar to the one before us. Defendant does not contest the finding that it took only minimal steps to remedy these known issues. Despite numerous prior complaints, specifically including that Route 24 drivers were failing to yield the right-of-way to motorists on Route 374, there is no indication that defendant undertook any study of the intersection at any time prior to the subject accident. The limited remedial measures that were taken occurred in 2016 in conjunction with a roadwork detour that was expected to increase traffic through the subject intersection for approximately two months. Despite recommendations from several DOT officials to implement a four-way stop application at the intersection, defendant instead (1) persuaded the owner of the subject building to remove the spindles from the attached deck, leaving in place its railing as well as the subject utility pole, and (2) temporarily placed a "your speed is" machine north of the intersection, in an attempt to slow southbound traffic.
At the time of the subject collision, Ohlsten[*3], operating a 2012 Jeep Liberty, was traveling eastbound on Route 24, intending to cross over Route 374, and claimants, on their trike motorcycle, were traveling southbound on Route 374, intending to continue south. Ohlsten testified that, as she approached the intersection, with which she was unfamiliar, she observed the various stop signals and "stopped or almost stopped" at the stop line, which was determined to be 19 feet from the southbound lane of travel on Route 374.[FN1] Ohlsten further testified that, while at the stop line, she looked to her left for southbound traffic on Route 374, observed a building that obstructed her view of the road, and decided to move up further. When asked what, if anything, she saw "after [she] moved up further," Ohlsten testified that she could not recall. When asked if, "[u]pon reaching the intersection and when [she] looked to [her] left" she saw claimants on their motorcycle, she testified that she did not. Ohlsten stated that she never saw claimants' motorcycle prior to the collision, only a "flash" in the moment before impact, which occurred in the southbound lane of Route 374. At the time of impact, claimants were traveling at the speed limit and Ohlsten was traveling 13 miles per hour, as demonstrated by data recovered from her vehicle.
Claimants' expert established that, at the stop line, eastbound motorists had only between 100 to 125 feet of sight distance of southbound traffic, which was clearly substandard according to the expert. He went on to testify that one could obtain 345 feet of unobstructed sight distance by moving 10 feet past the stop line, although the expert regarded that sight distance as still inadequate under certain industry standards, which required 445 feet of sight distance to safely proceed through the intersection at issue. The expert added that, when encroaching upon the southbound lane to obtain such a view, "the nose of th[e] vehicle would be in . . . some cases . . . in that travel lane." The Town Supervisor for the Town of Bellmont similarly testified that, in his personal experience traveling eastbound through the subject intersection, "about a third of [one's] vehicle has to be . . . pretty well on to [Route] 374" to see to the left. The State Police trooper who prepared a reconstruction of the accident testified that he was able to obtain an unobstructed view of southbound traffic by pulling his vehicle, a Chevrolet Tahoe, 11 feet past the stop line, leaving approximately 2 feet between the front of his vehicle and the Route 374 fog line. However, the trooper, who was notably 6 feet tall, conceded that, even then, it was possible that the sight line of an eastbound motorist could still be obstructed by the subject utility pole. Defendant's expert did not visit the intersection, evaluate the aforementioned visual obstructions, or perform any sight distance evaluation, instead addressing the propriety of DOT's election not to study the intersection or install a multi-way stop [*4]application.
After independently reviewing the probative weight of the evidence, we first agree that claimants established, by a preponderance of the evidence, that defendant's uncontested negligence in failing to study and adequately remedy the known dangerous condition of the intersection may be deemed a proximate cause of the subject accident (see Brown v State of New York, 31 NY3d at 520). We further find that Ohlsten's negligence in failing to yield the right-of-way was a normal and foreseeable consequence of the situation created by defendant's negligence. While we acknowledge the similarities between this case and those cited by defendant (see Prasarn v State of New York, 156 AD3d 1027, 1028-1029 [3d Dept 2017], lv denied 31 NY3d 913 [2018]; Graff v State of New York, 126 AD3d 1081, 1083-1085 [3d Dept 2015]), we are guided by the overarching principle that an intervening cause needs to be fully divorced from the initial negligence in order to break the causal nexus and be considered superseding (see Scurry v New York City Hous. Auth., 39 NY3d at 455). Here, although Ohlsten could not recall certain specifics at trial, we agree with the Court of Claims that the evidence presented permits the inference that she handled the sight distance challenges presented in a generally responsible manner. Her ultimate lack of success in navigating those challenges was not so unforeseeable a consequence of the danger that defendant allowed to persist so as to absolve it of its negligence. Put simply, defendant's breach plainly "increased the likelihood of an accident" in the manner that ultimately occurred (Przesiek v State of New York, 118 AD3d 1326, 1328 [4th Dept 2014] [internal quotation marks and citation omitted]; see Turturro v City of New York, 28 NY3d at 484-485; cf. Heffler v State of New York, 96 AD2d 926, 927-928 [2d Dept 1983]).
Defendant alternatively requests that this Court reapportion fault so that it is 50% or less responsible for the accident and, thus, only liable for claimants' total noneconomic loss to that extent (see CPLR 1601 [1]; Artibee v Home Place Corp., 28 NY3d 739, 744 [2017]). Considering the nature of the respective risk-creating conduct, as well as the comparative strength of the causal connection (see Restatement [Third] of Torts: Apportionment Liability § 8 [c]), we decline to do so (see generally Restatement [Third] of Torts: Apportionment Liability § 8, Illustration 2).
Aarons, Reynolds Fitzgerald, McShan and Mackey, JJ., concur.
ORDERED that the judgment is affirmed, without costs.

Footnotes

Footnote 1: Data from the Jeep obtained during an accident reconstruction established that the lowest speed Ohlsten reached in the five seconds preceding the collision was 3 miles per hour, and an eyewitness in a vehicle behind her provided conflicting accounts as to whether Ohlsten's vehicle ever came to a complete stop.